GALLAGHER v. CITY OF NEW YORK. GRIFFIN v. SAME. TRIMMER v. SAME. BUNCE v. SAME.

(Supreme Court, Appellate Division, Second Department. November 21, 1906.)

MUNICIPAL CORPORATIONS—CITY EMPLOYÉS—APPOINTMENT—CIVIL SERVICE— EXIGENCY.

   Though the appointment of watchmen and caretakers for the Brooklyn Disciplinary School for Boys is subject to civil service regulations, where the superintendent of the school was unable to obtain men through the civil service commission, and, in an exigency, employed plaintiffs from day to day, so that they might be discharged upon eligibles becoming available, the city, which is charged with the maintenance of the school, was liable for their wages, notwithstanding their retention was in violation of rule 12, § 4, of the commission, limiting emergency appointments to one week, making them subject to the approval of the commission, and prohibiting successive appointments.

Appeal from Municipal Court, Borough of Brooklyn, Fifth District.

Actions by John Gallagher, by Peter Griffin, by Walter Trimmer, and by Harry L. Bunce, against the city of New York. From the respective judgments for plaintiffs, defendant appeals. Affirmed.

Argued before WOODWARD, JENKS, HOOKER, RICH, and MILLER, JJ.

James D. Bell and James T. O'Neill, for appellant.
C. S. Hayes, for respondents.

HOOKER, J. This is an appeal by the city of New York in four cases, where the plaintiffs have had judgments of the Municipal Court.

The plaintiffs were employed as watchmen and caretakers at the Brooklyn Disciplinary School for Boys, in the borough of Brooklyn, without having been selected from the eligible list of the civil service commission and for a considerable time were designated weekly. The first designation was for a week, and thereafter they were employed by the superintendent of the school by the day. The training school was organized by act of the Legislature (Laws 1896, p. 281, c. 235, as amended by Laws 1892, p. 805, c: 396, and Laws 1897, p. 777, c. 508; Revised Charter City of New York, Laws 1897, p. 242, c. 14, § 695); and the city of New York is charged with its maintenance. The institution consists of a large stone building surrounded by about 50 acres of ground, inclosed by a 13-foot fence, used for parades, instruction, playground, and the like for the inmates. At the time the plaintiffs were employed there were about 250 boys confined there as inmates, who were fed, clothed, housed, instructed, employed, punished, and in other respects physically, morally, intellectually, religiously cared for in the institution. For the proper care of the institution's property and the proper watching of the inmates it was necessary to employ the plaintiffs to do the work they did.

Prior to the employment of these plaintiffs a number of men who had previously performed the labor they did had resigned and left the institution, and as the vacancies so occurred the superintendent of the institution made application to the civil service commission for the certification from the civil service list of persons qualified to be appointed. Although nearly a score of persons so certified were by the superintendent notified to appear, only two persons from all those certified consented to serve, and these worked only about a month each, and then quit. The list then became exhausted, and the commission was unable to certify names when called upon by the superintendent to do so. Because he could not obtain watchmen and caretakers from the civil service list while there was one, and because for a period of time there was none, the superintendent appointed these plaintiffs, whose wages were for a time regularly paid by the city. The city refused to pay the plaintiffs longer on the ground that their names had never been certified by the civil service commission, and on the further ground that they had not been lawfully appointed under the so-called "Emergency Rule" (Rule 12, § 4) of the municipal civil service commission. Under the provision of that section, it would seem that in case of public emergency one might only be appointed for a period not exceeding one week, subject to the subsequent approval of the civil service commission, and successive appointments were prohibited. The civil service commission, being notified of the appointment of the plaintiffs, withheld its approval. The superintendent of the institution testified that the reason he came to employ the plaintiffs was because he could not get any men from the civil service commission. In explanation of the re-appointments, he testified that he used every effort possible to find men suitable to act as watchmen and caretakers, first, from the civil service commission, and, that failing, from other sources, and that after these plaintiffs had completed the first week of their employment, and he was unable to get men from the civil service list, or elsewhere, the plain-

tiffs were redesignated by the day, because it was absolutely essential for the wellbeing of the institution that these services be performed by some persons. The appointment by the day was to permit their instant discharge in case men were obtained from eligible lists.

The failure of the persons certified by the civil service commission to accept these positions, and the subsequent failure of the list itself, was equivalent to there being no civil service list, and the plaintiffs were appointed in what is evident was a public emergency. The civil service law was enacted to assist the civil service of the state, and not impede it. That service demanded the employment of watchmen and caretakers at the Brooklyn Disciplinary Training School of New York. It is evident from the record that the employment of the plaintiffs was only made and continued after the course provided for in the civil service law and rules and regulations had failed to provide necessary assistance.

McBride v. City of New York, 56 App. Div. 520, 67 N. Y. Supp. 550, recognizes the same principle. There the plaintiff had received a temporary emergency appointment as nurse; there being no eligible lists in existence. Her appointment was within the requirement of the civil service law. She was to serve at Randall's Island Asylum for sick chidlren. In affirming the judgment in her favor against the city, this court said:

"The object of that law is to increase the efficiency of the civil service, but we cannot construe it as intended by the Legislature to bring an end to the business of caring for children in the asylum. The duty was imposed upon the department to make provision for continuing the asylum, and there was an exigency which required the department to provide nurses for the care of the children. This duty is a public one, to which the administration of the Civil Service Law is ancillary."

Nor do the facts that the plaintiffs continued in the service of the institution for more than a week, and that their appointment did not receive the approval of the civil service commission, preclude their recovery in these cases. After what appears to be a fair and honest effort the superintendent of the institution was unable to obtain this necessary work to be done in any other manner than by the continued employment of these plaintiffs. In such a case as this it is evident that the intention of the Legislature was that the strict mandates of the civil service law, and the rules and regulations adopted pursuant thereto, should yield where public necessity amounting to an emergency demands.

The judgments should be affirmed, with costs. All concur.