HERMAN VAN SLOCHEM, Respondent, v. HAROLD G. VILLARD and Others, Defendants, Impleaded with EDWARD ASHFORTH and Others, Appellants. (Appeal No. 2.)

First Department, December 6, 1912.

See head note in *Van Slochem* v. *Villard, No. 1 (ante, p. 161).*

APPEAL by the defendants, Edward Ashforth and others, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 26th day of July, 1912, denying the said defendants' motion for judgment on the pleadings.

*Edgar J. Nathan,* for the appellants.

*Henry L. Scheuerman,* for the respondent.

SCOTT, J.:

For the reasons stated upon the appeal of Harold G. Villard (*Van Slochem* v. *Villard, No. 1,* 154 App. Div. 161) from the order overruling his demurrer to the complaint, the order herein appealed from will be affirmed, with ten dollars costs and disbursements.

INGRAHAM, P. J., McLAUGHLIN and CLARKE, JJ., concurred; DOWLING, J., dissented.

Order affirmed, with ten dollars costs and disbursements.

---

In the Matter of the Application of SIDNEY M. FUERST, Appellant, for a Writ of Mandamus against WILLIAM H. MAXWELL, City Superintendent of Schools, Respondent.

First Department, December 13, 1912.

Schools — license of principal of public schools, city of New York — charter construed — issuance of permanent license discretionary.

Under the charter of the city of New York a principal of a public school must be appointed from the eligible list after examination and must be licensed, being a part of the teaching staff, although there is no express provision of the charter requiring principals to be licensed.

Although under the authority of the city charter the board of education has enacted a by-law providing that licenses to teachers shall be issued for one year and may be renewed for two successive years if the holder's work be satisfactory, and at the close of the third year the city superintendent may make the license permanent, the issuance of a permanent license is within the discretion of the city superintendent.

APPEAL by the relator, Sidney M. Fuerst, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 10th day of June, 1912, denying the relator's motion for a writ of mandamus.

*Francis Gilbert* and *A. S. Gilbert*, for the appellant.

*Charles McIntyre* and *Terence Farley*, for the respondent.

Order affirmed, with ten dollars costs and disbursements, on opinion of BIJUR, J., at Special Term.

Present — INGRAHAM, P. J., LAUGHLIN, CLARKE, SCOTT and MILLER, JJ.

The following is the opinion of the Special Term:

BIJUR, J.:

This is an application for a writ of mandamus requiring respondent "to place the relator's name upon the list of those eligible for appointment to the position of principal in the public schools of the city of New York * * *, to appoint the relator as principal" and to reinstate him in such position. The undisputed facts are that prior to January 4, 1904, after satisfactorily passing the requisite examination, relator's name was placed on the eligible list for the position of principal; that on January fourth he was appointed principal; that in November, 1903, he had received what is called a "temporary principal's license * * * good for a period of one year from and after the date of the commencement of service;" that about December 1, 1904, the board of school superintendents declared his work fit and meritorious pursuant to section 1091 of the charter.* His license was thereupon renewed for another period of

---

* See Laws of 1901, chap. 466, § 1091. Since amd. by Laws of 1911, chap. 902, and Laws of 1912, chap. 459.— [REP.

one year and his salary increased for the year 1905; that about December 7, 1905, his service was similarly commended, his license again renewed and his salary proportionately increased; that on or about December 6, 1906, he received similar approval, but respondent refused to issue to him either a permanent or a further temporary principal's license. About January, 1907, certain charges were made against relator. In February, 1907, he was suspended for twenty days, without pay, pending an investigation, was later tried by a committee of the board, was acquitted of some of the charges, found guilty of some, and for punishment was in March suspended for a further period of twenty days, without pay. Meanwhile relator had continued as *de facto* principal, but after the second suspension he received two leaves of absence, at the end of which, however, he did not continue to act as principal, but after a long interval was in September, 1908, appointed and continued to act as teacher. In January, 1911, respondent issued to relator a third renewal temporary license for one year, and shortly thereafter relator was appointed as principal of a certain school, but his appointment was declared void in a proceeding brought in the Supreme Court by a person on the eligible list against the board of superintendents and the board of education, to which proceeding relator was not a party. The ground of the decision was that relator was not at the time of the last-mentioned appointment on the eligible list of those holding principals' licenses. There is no provision in the charter which expressly requires a principal to be licensed. Section 1089* requires the board of education to designate "the kinds or grades of licenses *to teach* which may or shall be used in The City of New York." It also requires the board of education to designate the "academical and professional qualifications required for service of principals, * * * and all other members of the teaching staff." The distinction here made would indicate that while licenses are required for teachers they are not required for principals. Section 1089 also contains a provision reading, with certain exceptions not here relevant: "No person shall be appointed to any educational

* See Laws of 1901, chap. 466, § 1089, as amd. by Laws of 1901, chap. 718, and Laws of 1912, chap. 455.—[REP.

position whose name does not appear upon the proper eligible list." There is a sentence in the middle of section 1090 which reads: "The nominations provided for above [referring to those of principals, branch principals, heads of departments, teachers, assistants and all other members of the teaching staff] must be made from the list of properly certificated principals and teachers." Just what the phrase "properly certificated" is intended to mean is not clear, unless it refers to a license. That such is its significance is indicated by the first sentence of section 1089, reading: "A board of examiners is hereby constituted, whose duty it shall be to examine all applicants who are required to be licensed * * * and to issue * * * such licenses * * *." This, in connection with the fact that principals must be appointed from the eligible list, and that no means of being entered on such list except after an examination by this board are provided, would seem to lead to the fair inference that principals were intended to be licensed and were really regarded as part of the teaching staff. Section 1068 of the charter authorizes the board of education, "subject to the provisions of law and of this act, to enact by-laws, rules and regulations for the proper execution of all duties devolved upon the board." The board has accordingly adopted various by-laws referring to principals, and among others, section 66, which reads: "The following licenses shall be issued for service in the public schools of The City of New York," and under the succeeding tabulation of licenses for positions in the several classes of schools a principal is enumerated under each class. From this it would appear also that a practical interpretation of the charter provisions followed for years has been that they require principals to be licensed, and in this respect to be regarded as teachers. The last few sentences of section 1089 provide that such licenses shall be issued for a period of one year and may be renewed for two successive years if the work of the holder is satisfactory to the city superintendent, and that at the close of the third year of continuous successful service the city superintendent may make the license permanent. The relator contends that since his service was found meritorious by the board of school superintendents during each of the three probationary years he was entitled to a permanent license as a matter of law. I find no warrant

in the charter for so holding, but, on the contrary, the language of the statute and the authorities indicate clearly that the issuing of the permanent license is a matter in the honest discretion of the superintendent. The provisions of the charter hereinabove considered are far from clear, but I think that their general scheme may fairly well be inferred, and that under the circumstances this application must be denied.