ARTHUR D. STETSON, Appellant, *v.* THE BOARD OF EDU-
CATION OF THE CITY OF NEW YORK, Respondent.

Public schools — New York (city of) — when general statutes
do not invalidate special provisions of the Greater New York
charter, though such provisions may be inconsistent with the
general law — requirement that teacher in New York city should
pass certain examinations to become a principal of a public school
— teacher who has not complied therewith may not recover for
salary of principal.

1. While rights which have vested under and by virtue of a
statute cannot be disturbed by a subsequent statute, the right to
teach in the public schools is not vested and is always subject to
regulation at the hands of the legislature. The general statutes
which existed at the time of the adoption of the Greater New York
charter do not invalidate or render inoperative charter provisions
alleged to be inconsistent with them.

2. Plaintiff brings this action to recover for arrears of salary as
principal of a public school of the third order in the borough of
Brooklyn. The plaintiff became principal of such a school after
the provisions of the charter became effective. The legislature had
then by the provisions of the charter (L. 1897, ch. 378; L. 1901, ch.
466, §§ 1089, 1090), and through by-laws and regulations passed by
the board of education pursuant to the charter (§ 1068), prescribed
that the plaintiff could not be appointed a principal of an elemen-
tary school of an order higher than the fourth grade unless he had
(a) passed the examination entitling him to a principal's license,
and thus secured the right to the license and a place on the eligible
list, or (b) been exempted from such examination. The plaintiff
had neither passed nor had been exempted from the examination,
and it follows that he is not entitled to the salary incident to the
principalship. (*Steinson* v. *Board of Education of the City of New
York*, 165 N. Y. 431, distinguished.)

*Stetson* v. *Board of Education*, 165 App. Div. 476, affirmed.

(Argued May 9, 1916; decided May 30, 1916.)

APPEAL from a judgment, entered January 19, 1915,
upon an order of the Appellate Division of the Supreme
Court in the first judicial department, reversing a judg-
ment in favor of plaintiff entered upon a decision of the

court at a trial term without a jury, and directing a dismissal of the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John E. O'Brien, Noah A. Stancliffe* and *Henry E. Papenberg* for appellant. Either of the certificates of license issued to the plaintiff by the superintendent of public instruction fully qualified him for the position of principal of Public School No. 104. (L. 1864, ch. 555, tit. 1, § 15; L. 1875, ch. 567; L. 1888, ch. 331; L. 1894, ch. 536.) A general state license qualifies the holder for any position on the teaching staff of any common school in the state, beyond dispute, by the decisions of the courts. (*Steinson* v. *Bd. of Education,* 49 App. Div. 143; *Bogart* v. *Bd. of Education,* 106 App. Div. 56; *Shaul* v. *Bd. of Education,* 108 App. Div. 19; *People ex rel. Sprague* v. *Maxwell,* 87 App. Div. 391.) Nothing in the by-laws of the board of education in effect at the time of plaintiff's appointment as principal of Public School No. 104 attempts to limit the effect given by law to a state license issued by the superintendent of public instruction. (*People ex rel. Murphy* v. *Maxwell,* 177 N. Y. 494.) Plaintiff has not waived his claim. (*City of Buffalo* v. *N. Y., L. E. & W. R. R. Co.,* 152 N. Y. 276; *Polinsky* v. *People,* 73 N. Y. 65; *McHench* v. *Bd. of Education,* 127 App. Div. 294; *Moore* v. *Bd. of Education,* 121 App. Div. 862; 195 N. Y. 614; *Grant* v. *City of Rochester,* 79 App. Div. 460; 175 N. Y. 473; *Clark* v. *State,* 142 N. Y. 101; *People ex rel. Satterlee* v. *Police Board,* 75 N. Y. 38; *McCunney* v. *City,* 40 App. Div. 482; *McGrade* v. *City of New York,* 126 App. Div. 362; *Kehn* v. *State,* 93 N. Y. 291.)

*Lamar Hardy, Corporation Counsel* (*Charles McIntyre* and *Terence Farley* of counsel), for respondent. The plaintiff was not licensed to be the principal of a school of twelve classes. (*Matter of Fuerst* v. *Maxwell,* 154

App. Div. 166; *Hazen* v. *Bd. of Education*, 127 App. Div. 235; *Wood* v. *Bd. of Education*, 59 Misc. Rep. 605; *Thomson* v. *Bd. of Education*, 201 N. Y. 457; *Ridenour* v. *Bd. of Education*, 15 Misc. Rep. 418; *Steinson* v. *Bd. of Education*, 165 N. Y. 431; *Bogert* v. *Bd. of Education*, 106 App. Div. 56; *Shaul* v. *Bd. of Education*, 108 App. Div. 19; *People ex rel. Sprague* v. *Maxwell*, 87 App. Div. 391; *Gormley* v. *Bd. of Education*, 129 N. Y. Supp. 153; *People ex rel. Bd. of Education* v. *Finley*, 211 N. Y. 51.) Since the plaintiff's name did not appear on the eligible list from which the vacancy should have been filled he did not legally become principal of the school when it became a twelve-class organization, because the statutory provisions apply to vacant principalships. (*Matter of Fuerst* v. *Maxwell*, 154 App. Div. 166; *Hoefling* v. *Bd. of Education*, 120 App. Div. 545; *Hazen* v. *Bd. of Education*, 127 App. Div. 235; *Thomson* v. *Bd. of Education*, 201 N. Y. 457; *People ex rel. Schau* v. *McWilliams*, 185 N. Y. 92; *Matter of Dill*, 185 N. Y. 106; *People ex rel. Huber* v. *Adam*, 116 App. Div. 613; *People ex rel. Corkill* v. *McAdoo*, 113 App. Div. 770; *Slavin* v. *McGuire*, 205 N. Y. 84; *People ex rel. Goldey* v. *Maxwell*, 65 App. Div. 265; 169 N. Y. 608; *Matter of Brooklyn Teachers' Assn.* v. *Bd. of Education*, 85 App. Div. 47; 176 N. Y. 564; *People ex rel. Schlivinski* v. *Maxwell*, 80 App. Div. 313; *People ex rel. Sprague* v. *Maxwell*, 87 App. Div. 391.) Not having been formally established as the principal of the twelve-class school by the joint action of the board of education and the board of superintendents, as required by section 1090, the plaintiff did not become principal of the higher order of school in the manner prescribed by law and under those circumstances he did not secure legal title to his position. (*Hoefling* v. *Bd. of Education*, 120 App. Div. 545; *Hazen* v. *Bd. of Education*, 127 App. Div. 235; *Thomson* v. *Bd. of Education*, 201 N. Y. 457; *Gormley* v. *Bd. of Education*, 128 N. Y. Supp. 153; *Wood* v. *Bd. of*

*Education,* 59 Misc. Rep. 605; *People ex rel. Rafferty* v. *Bd. of Education,* 133 App. Div. 894; 196 N. Y. 570; *People ex rel. Callahan* v. *Bd. of Education,* 174 N. Y. 169; *Dildine* v. *Bd. of Education,* 133 App. Div. 261.) Plaintiff has waived all rights to the arrears sought. (*Clark* v. *West,* 193 N. Y. 349; *People ex rel. Barringer* v. *Bd. of Education,* 140 App. Div. 903; 203 N. Y. 550; *Nassoiy* v. *Tomlinson,* 148 N. Y. 326; *Brown* v. *Bd. of Education,* 70 Misc. Rep. 399; *Du Moulin* v. *Bd. of Education,* 124 N. Y. Supp. 901; *Collins* v. *City of New York,* 151 App. Div. 618; *Sheehan* v. *Bd. of Education,* 120 App. Div. 557; 193 N. Y. 627; *Pitt* v. *Bd. of Education,* 216 N. Y. 304; *Matter of Grendon,* 114 App. Div. 754; *Moore* v. *Bd. of Education,* 121 App. Div. 862.)

COLLIN, J. The plaintiff at the Trial Term recovered, in accordance with the allegations of his complaint, a judgment for arrears of salary as principal of public school number 104 of the borough of Brooklyn for the period from December, 1903, to the date of the commencement of this action. The Appellate Division reversed the judgment and dismissed the complaint upon the merits.

The salient facts are: Prior to 1890 the plaintiff became, under the general statutes, by virtue of a diploma issued by a state normal school, as well as by a certificate of qualification granted by the state superintendent of public instruction, licensed and authorized to teach in any of the public or common schools. (Laws of 1866, ch. 466, § 6; Laws of 1864, ch. 555, § 15, as amended by Laws of 1888, ch. 331, § 1.) In 1890 and through many years prior thereto, the board of education of the city of Brooklyn was vested with the entire charge and direction of the public schools of the city, was empowered to make its own by-laws and regulations, not inconsistent with the laws of the state, and through a city superintendent of schools, or superintendent of public instruction, as denominated in the later statutes, to examine the qualifications of

teachers and grant certificates in such manner and form as might be prescribed by the state superintendent. (Laws of 1850, ch. 143, §§ 1, 2, 5; Laws of 1873, ch. 420.) While the charter of the city of Brooklyn contained certain provisions relating to the board of education and the schools, those provisions did not affect the enactments we have stated. Under those enactments there existed through the period prior to the creation of the present city of New York in 1897 (Laws of 1897, ch. 378) by-laws or regulations of the board of education requiring the examination of the persons to be employed as teachers or principals in the schools, providing for the grading and the effect of the certificates or licenses granted to those who passed the examinations, and that no person should be appointed a teacher or principal who did not hold the certificate prescribed by the by-laws evidencing the qualifications for the appointment. In the year 1890 the plaintiff entered certain of those examinations and obtained two certificates entitling him to teach any class in a public school of the city. Thereafter and in September, 1890, he was appointed and remained a teacher until November, 1902. In 1899, having passed an examination therefor, the city superintendent of schools granted the plaintiff a certificate known as "Head of Department A," which entitled him to be appointed as the head of a department. In March, 1902, the elementary day schools of the borough of Brooklyn were divided into five orders according to the number of classes. The fourth order consisted of schools having from six to eleven classes; the third order consisted of schools having from twelve to twenty-seven classes. A person entitled to be appointed as the head of a department might lawfully be appointed as a principal of a school of the fourth order only. In November, 1902, the plaintiff was appointed principal of school number 104, which was then of the fourth order. His salary as such principal was $2,400 per annum. In December, 1903, school num-

20

ber 104 was transformed, by the adding of classes, into a school of the third order and the plaintiff continued to preside over it, and was recognized by the defendant as its principal, without any new or further appointment, until the commencement of this action. His services therein were accepted and approved as fit and meritorious by the defendant. Through the period he was paid and accepted as his salary $2,400 per annum. In case he was a legally-appointed principal of the school after December, 1903, he should have received, pursuant to the by-laws of the defendant (See *Pitt* v. *Board of Education of N. Y.*, 216 N. Y. 304), for the first year $2,750, for the second year $3,000, for the third year $3,250, for the fourth and each subsequent year $3,500. The action is to recover the difference between the amount he did receive and the amount he should, as he alleges, have received.

If the plaintiff was the principal *de jure* of the school of the third order the judgment of the Trial Term was right; otherwise, it was erroneous and the judgment of the Appellate Division was right. The right to the position determined the right to the salary incident thereto. Performance of the duties of it did not in and of itself entitle to the salary. (*Thomson* v. *Board of Education of N. Y.*, 201 N. Y. 457.) Relevant statutes and by-laws additional to those mentioned existed. The Greater New York charter (Laws of 1897, ch. 378; Laws of 1901, ch. 466) constituted a board of examiners in the department of education to examine all applicants required to be licensed and to issue to them such licenses as they are found entitled to receive. It provided: "The board of education, on the recommendation of the board of superintendents, shall designate, subject to the requirements of the state school laws in force when this act takes effect or that may thereafter be enacted, the kinds or grades of licenses to teach which may or shall be used in the city of New York together with the academic and pro-

fessional qualifications required for each kind or grade of license.  The board of education, on the recommendation of the board of superintendents, shall also designate, subject to the like limitations, the academical and professional qualifications required for service of principals, branch principals, supervisors, heads of departments, assistants and all other members of the teaching staff.  The board of examiners shall hold such examinations as the city superintendent may prescribe, and shall prepare all necessary eligible lists,  *  *  *.  All licenses shall be issued in the name of the city superintendent of schools.  Graduates of colleges and universities recognized by the regents of the university of the state of New York, who have pursued for not less than one year pedagogical courses, satisfactory to the city superintendent; graduates of schools and colleges for the training of teachers, approved by the state superintendent of public instruction; and teachers holding a state certificate issued by the state superintendent of public instruction since the year eighteen hundred and seventy-five, or holding a college graduate's certificate issued by the same authority,  *  *  *  may be exempted, in whole or in part, from such examination at the discretion of the city superintendent.  *  *  *  The names of those to whom licenses have been granted, including those exempted from examination and those duly licensed in the several boroughs prior to the date on which this act takes effect, shall be entered by the city superintendent upon lists to be filed in his office, a separate list being made for each grade or kind of license for which the board of education shall by its by-laws make provision;  *  *  *  Except as city superintendent or associate city superintendent or district superintendent, as director of a special branch, as principal of or teacher in a training school or as principal of a high school, no person shall be appointed to any educational position whose name does not appear upon the proper eligible list.  No person shall teach in any public

school in the city who has not such license, except as herein otherwise provided, nor shall any unlicensed teacher have any claim for salary." (§ 1081 of the original charter; § 1089 of the revised charter.) These provisions apply to applicants for the position of principal. (*Matter of Fuerst* v. *Maxwell,* 154 App. Div. 166.) It provided further: "Principals, branch principals, heads of departments, teachers, assistants and all other members of the teaching staff, shall be appointed by the board of education on the nomination of the board of superintendents. Such nominations and appointments shall be made except in the case of high schools or training schools for teachers, for the several local school board districts respectively, and when so made the principals, branch principals, heads of departments, teachers, assistants and all other members of the teaching staff shall be assigned to duty to such schools, and to such positions in such schools, as the board of superintendents shall determine.   *   *   * The nominations provided for above must be made from the list of properly certificated principals and teachers and other persons eligible for service in the positions to be filled, in the regular order of the standing of the candidates on said lists, provided, however, that the board of superintendents may consider for each appointment the three persons whose names are highest on the appropriate eligible lists." (§ 1090 of the revised charter.) Under the authority of those provisions and of the express power to enact by-laws and regulations (§ 1068), the board of education in 1898 and in June, 1902, enacted by-laws prescribing the licenses to be obtained by the teachers and principals in the schools of the borough of Brooklyn. The by-laws required persons to be appointed principals to be examined and to be licensed as principals. They provided:

"A license as principal of an elementary school shall qualify the holder for the position of principal of an elementary school, of a truant school, of an elementary evening school, or of an evening high school, provided the

licensee holds in the case last mentioned the position of principal of any elementary day school."

"Except as principal of a high school, teacher in or principal of a training school, director of a special branch, teacher in or principal of an evening school, vacation school or playground, no person required to be licensed shall be appointed to any teaching or supervising position whose name does not appear upon the proper eligible list."

The plaintiff has never been exempted from the examination prescribed for applicants for a license as principal of an elementry school. He made several unsuccessful efforts, through entering the examinations for it, to obtain the license. He has never held such a license and his name has never been entered upon the eligible list containing names of those holding principal's licenses.

A mere reading of the provisions of the charter and of the by-laws convinces that they forbade the board of superintendents to nominate and the board of education to appoint or promote the plaintiff to a school of the third order. The provisions were intended to protect and promote the efficiency and the educational influence of the public schools. They affect or concern public interest and obedience to them is an absolute and positive duty. It is a constitutional principle that powers given to public officers or others for public purposes or the public benefit are always to be exercised when the occasion arises. (*People ex rel. Reynolds* v. *Common Council of Buffalo*, 140 N. Y. 300; *State ex rel. Hugg* v. *Camden*, 39 N. J. L. 620; *Binder* v. *Langhorst*, 234 Ill. 583; *People ex rel. Otsego County Bank* v. *Board of Supervisors*, 51 N. Y. 401.)

The appellant brings emphatically to our attention the language of the general statute declaring that the certificate of qualification granted by the state superintendent of public instruction " shall be deemed and considered a legal license and authority to teach in any of the public

schools of this state, without further examination of the
person to whom the same was granted, any provision of
law in conflict with this provision to the contrary not-
withstanding." (Laws of 1894, ch. 556, tit. 1, § 10.) It is
not necessary to consider here, and we do not consider the
relations between the general statute and the statutes
concerning the board of education and the schools of the
city of Brooklyn as it formerly existed. Both, in their
inception, reach far back and it may well be doubted that
there was a conflict between them. Manifestly, however,
the legislature might by a statute enacted while the gen-
eral law existed provide for further examination of the
persons holding the certificates of the state superintendent
and of a state normal school. While rights which have
vested under and by virtue of a statute cannot be
disturbed by a subsequent statute, the right to teach
in the public schools is not vested and is always sub-
ject to regulation at the hands of the legislature.
The general statutes invoked by the appellant, which
existed at the time of the adoption of the Greater
New York charter, do not invalidate or render inop-
erative the charter provisions which the appellant
alleges to be inconsistent with them. The plaintiff
became a principal of a school of the third order after the
provisions of the charter became effective. The legisla-
ture had then and by those provisions prescribed that the
plaintiff could not be appointed a principal of an ele-
mentary school of an order higher than the fourth grade
unless he had (a) passed the examination entitling him to
a principal's license, and thus secured the right to the
license and a place on the eligible list, or (b) been exempted
from such examination. The plaintiff had neither passed
nor been exempted from the examination. The case of
*Steinson* v. *Board of Education of the City of New York*
(165 N. Y. 431) is without application here, because the
action therein was brought to recover salary for a period
ending July 15, 1896, and the plaintiff was, as the relevant .

statutes then did not limit the effect of the certificate granted by the state superintendent, legally appointed September, 1887, to the position in which he claimed the salary and was illegally prevented from teaching.

The appellant brings to our attention also the language of the Greater New York charter already quoted by us: "The board of education on the recommendation of the board of superintendents shall designate, subject to the requirements of the state school laws in force when this act takes effect or that may thereafter be enacted, the kinds or grades of licenses to teach which may or shall be used in the city of New York together with the academic and professional qualifications required for each kind or grade of license," and argues that the words "subject to the requirements of the state school laws in force when this act takes effect" preserve the licenses procured by the plaintiff under the general statutes and their effect from any limitation. A sufficient answer is that the language and requirements of the charter provisions forbid such a construction inasmuch as it would nullify many of them. The present commissioner of education of the state has well said in an opinion: "The references to the requirements of the state school laws contained in such provisions only relate to such provisions of the Education Law as prescribe the minimum qualification of teachers. Such references should not be construed to restrict the power of the board of education to impose additional academic and professional qualifications as a preliminary requirement for appointment as principal of the elementary schools of the City of New York." (*Matter of Opperman* v. *Board of Education of the City of New York.*) When the Greater New York charter went into effect, January 1, 1898, the plaintiff was not the principal of an elementary school. He was a teacher, and was protected in the tenure of that position. (§ 1117 of the original charter; § 1101 of the revised charter.) Under the provisions of the charter, he was not

qualified to become the principal of an elementary school. In accordance with those provisions, he subsequently, in 1899, became qualified to be appointed head of a department or as a principal of a school of the fourth order, and in 1901 received such an appointment. The power of the board of education to classify the schools, as it did, is unquestioned. The fact that the plaintiff became a lawful principal of a school of the fourth order did not qualify him for the principalship of a school of the third order. His formal appointment to a school of the third order, accepted by him, would have been illegal and reprehensible. The board of education and himself would have violated the spirit and the language of the statute and manifested an indifference to its purpose and their duties and responsibilities. His retention as principal of school 104, after it was transformed into a school of the third order, was equally a violation of the spirit and the language of the statute. It follows that he is not entitled to the salary incident to the principalship. The points of the appellant not specifically considered by us have been answered by what we have said, or are not meritorious.

We are of the opinion that the instrument executed by the plaintiff in December, 1903, in form waiving all claims for increase of salary, in consideration of being permitted to remain principal of a school of twelve classes, was void and inoperative, because it was a part of a transaction forbidden by the statute.

The judgment should be affirmed, with costs.

WILLARD BARTLETT, Ch. J., HISCOCK, CUDDEBACK, HOGAN, SEABURY and POUND, JJ., concur.

Judgment affirmed.