CARLETON BACON et al., Plaintiffs, *v.* BOARD OF EDUCATION OF THE CITY OF NEW YORK, Defendant.

Supreme Court, Special Term, New York County, April 15, 1953.

*Sidney A. Fine* and *Morris Weisberg* for plaintiffs.

*Denis M. Hurley, Corporation Counsel (Sidney P. Nadel, Edward J. McLaughlin* and *Louis Montelione* of counsel), for defendant.

MATTHEW M. LEVY, J. Some years ago, the board of education of the City of New York created the position of chairman of department (originally called "first assistant") in a number of different subjects in the academic and vocational high schools in the city, and designated the licenses and qualifications required for appointment thereto. There are presently forty-three of such positions. He who is a chairman of department of a specified subject is required by the by-laws of the board of education to have a license as such chairman — separate and distinct from his license as a high school teacher — and to be appointed, after a competitive examination, from an eligible list promulgated for the position as chairman by the board of examiners of the board of education. The by-laws of the board of education provided for two salary schedules: Schedule II-a for teachers and Schedule II-b for chairmen of departments. The chairman's salary was and is greater than that of the teacher. Subdivision 6 of section 82 of the board's by-laws provides for such licensed and appointed chairmen, specifies that they shall be in charge of departments of instruction of five or more teachers in subjects in which they are licensed, and, further, that "In departments

in which there are no chairmen or in which the chairman is relieved of his post, a teacher may be assigned by the principal, subject to the approval of the superintendent of schools, to serve as chairman, without increase in rank or pay.'' Pursuant to this provision, some of the principals organized certain departments of instruction in their schools, a number of them in subjects additional to the forty-three designated by the board. The routine procedure would be for the principal to inform the superintendent of schools of the organization of the specific department of instruction, and each year to report the name of the teacher serving as chairman thereof, together with his license as acting chairman — or as teacher if he were merely assigned as chairman.

The plaintiffs, fifty-four in number, hold permanent appointments as licensed high school teachers in the city of New York. Each of the plaintiffs was assigned by the principal of the high school (to which that plaintiff was then attached as a teacher) to serve for a one-term period as a chairman of a department of instruction. Thereafter, the time-to-time designations of the plaintiffs were, on renewed assignments, for a total of varying periods ranging from one year to thirty years. Thirty-two plaintiffs were assigned as acting chairmen of departments comprised of five or more teachers (including the plaintiff); twenty-two of the plaintiffs, of departments of no more than four teachers (including the plaintiff); and one of the latter group of plaintiffs, Weingarten, also supervised two teachers from other departments who taught classes in his. None of the plaintiffs (except the plaintiff Kraemer, whose status will be separately considered) holds a license as chairman, and in fact some of the plaintiffs took and failed examinations for the prescribed license. Some of the assignments were nevertheless continued, because, in the exercise of administrative discretion, the board appointed eligibles to other vacant chairman-of-department positions where, in its judgment, the services of a licensed and appointed chairman were more urgently required; and many of the assignments were renewed because the board did not have any eligibles available for appointment to the respective positions of chairmen of departments filled by the plaintiffs in certain specific areas of instruction. While the superintendent of schools was apprised of the assignments of the plaintiffs to serve as chairmen, the board did not take any action with respect thereto. The board paid to each of the plaintiffs — and each of them accepted through the years — the lower salary of a teacher under Schedule II-a and not the salary

of a chairman of department under Schedule II-b. There is no claim before me that any of the plaintiffs was compelled to accept the assignments against his will, over his objection, under protest or in fear of reprisal. On the contrary, the proof is undisputed that as an acting chairman, a teacher had certain assumed advantages, such as reduction of normally required class-work duties, some authoritative responsibility, higher standing among his fellows, sought-after associations in the school system, and practical experience deemed helpful in qualifying for licenses as chairmen or in allied fields of endeavor, pedagogic and otherwise.

The plaintiffs have sued the board of education of the City of New York in this action for a judgment (1) declaring arbitrary, discriminatory, illegal and void so much of subdivision 6 of section 82 of the defendant's by-laws as permits the assignment of a teacher to serve as acting chairman of department of instruction in an academic or vocational high school " without increase in rank or pay "; (2) declaring that the high school teachers assigned to serve as and doing the work of acting chairmen of departments are each entitled to the higher salary specified in Schedule II-b for a chairman of department; and (3) awarding a money judgment to each of the plaintiffs for the difference between the salary paid to him as a teacher and that which he claims he should have received as a chairman.

In respect of matters pertinent to the present inquiry, the statutory scheme of things is quite comprehensive and easily comprehensible. The Education Law is detailed, explicit and mandatory. A rapid survey of its applicable provisions will aid in a solution of the problem presented in this lawsuit.

The power is vested in the board of education " To create, * * * maintain and consolidate such positions * * * as, in its judgment, may be necessary for the proper and efficient administration of its work; to appoint * * * such * * * supervisors, principals, teachers * * * and other employ-ees * * * as said board shall determine necessary for the efficient management of the schools * * *; and to determine their duties except as otherwise provided " by the statute (§ 2554, subd. 2). It is the board of education (and then only " on the recommendation of the superintendent of schools ") which is the body empowered to designate " the kind and grades of licenses which shall be required for service as principal * * * supervisor * * * or * * * head of depart-ment * * * or any other position of the teaching staff together with the academic and professional qualifications

required for each kind or grade of license '' (§ 2573, subd. 10). The board of education alone has the power to make appointments of '' supervisors, principals, teachers and all other members of the teaching and supervising staff '', and then only '' upon the recommendation of the superintendent '' (§ 2573, subd. 1). It is the superintendent who has the power to issue licenses '' as may be required under the by-laws and regulations of the board '', but such licenses may be issued only on the recommendation of the board of examiners (§ 2566, subd. 7). The board of examiners has the duty '' to hold examinations whenever necessary, to examine all applicants who are required to be licensed or to have their names placed upon eligible lists for appointment in the schools * * *, and to prepare all necessary eligible lists '' (§ 2569, subd. 1). Such appointments '' shall be from the first three persons on appropriate eligible lists prepared by the board of examiners '' (§ 2573, subd. 10). And, in the concluding sentence of subdivision 10 of section 2573 of the Education Law, the Legislature has unmistakably provided that '' No person required to have a license under the provisions of this chapter [Chapter 16 of the Consolidated Laws, being the Education Law] in order to be employed in a position who does not have such license shall have any claim for salary, except that a person who has been assigned to teach in a subject or field not specifically covered in his license but on the same rank or level of service shall be entitled to his salary.''

Our courts have unvaryingly adhered to the principle that a teacher who performs the duties of a higher grade until that grade is finally filled as provided by law is not entitled to the tenure of the higher grade or the salary attached to it. Salary and tenure under the law are assured only to those persons who obtain their positions in the manner prescribed by law. An '' appointment '' by the board of education is as legally necessary for a '' probationary period '' as for any other term (Education Law, § 2573, subd. 1). One not so appointed is thus merely a *de facto* holder of the position and is not entitled to recover the salary scheduled for the position. (*Hoefling* v. *Board of Educ. of City of New York,* 120 App. Div. 545; *Hazen* v. *Board of Educ. of City of New York,* 127 App. Div. 235.) It is the right to the position which determines the right to the salary incident thereto, and not the performance of the duties of the position. (*Thomson* v. *Board of Educ. of City of New York.* 201 N. Y. 457; *Stetson* v. *Board of Educ. of City of New York,* 218 N. Y. 301.) The statutes so provide in language and effect, and the by-laws of the board of education also leave no room for

doubt on this question. Sections 390 through 394 of the by-laws establish the licenses and qualifications requisite for first assistant (now called chairman-of-department) positions in general, academic, special, technical and shop subjects. "Teachers temporarily assigned to higher positions to which they have not been regularly appointed in accordance with law shall not be entitled to a higher salary" (By-Laws, § 490). "No one shall have a claim to salary in any position for which a license is established in these By-Laws unless such person has been granted such license or an appropriate higher license and has been appointed thereunder in accordance with the provisions of this section" (By-Laws, § 231). The section attacked by the plaintiffs — permitting the assignment of a teacher as acting chairman "without increase in rank or pay" (§ 82, subd. 6) — is thus entirely consonant with these general provisions of the board's by-laws, and with the applicable sections of the Education Law.

The fact that, at the request of their respective principals, the plaintiffs voluntarily assumed extra duties which corresponded in the main to the duties imposed upon one who has passed the required examination and been licensed accordingly is not a legal ground for directing that they be paid the increased salary sued for. Each of the plaintiffs had the alternative of refusing the assignment as acting chairman of department, or of taking and passing the examination for a license thereto and being duly licensed and appointed. Each, for reasons of his own, willingly served as acting chairman for the lower salary of a teacher, with full knowledge that he did not pass the competitive examination or was not exempt from taking it, or that he had not been duly licensed or appointed as chairman.

The fact that certain high school principals found it convenient to select the plaintiffs to render these extra services is no basis upon which I might hold that the board of education is thereby bound to do what the controlling statutes and by-laws do not compel it to do, if indeed they do not preclude it from so doing. The sole power of appointment was vested by the Education Law in the board of education, and the board did not delegate that power to the principals of the high schools — assuming that it was at liberty to do so, a proposition quite doubtful, to say the least. The board's by-laws specifically provided the sole means by which a teacher could be appointed to the position of chairman of department, and these by-laws have the force and effect of statute binding alike upon the defendant, its officers

and agents, and the teachers in the school system, as well as the school principals. If the beneficent merit system with competitive examinations is to be preserved, we must adhere strictly to the rule that only one who has passed the prescribed appropriate examination is entitled to a certificate of appointment, and only one who has been duly appointed is entitled to the salary of the position. To rule otherwise would be tantamount to appointing unqualified persons, in the sense that they had not passed the required competitive examinations or had not received certificates of appointment as required by law. And not alone might incompetence be thus permitted, but favoritism or discrimination might thus be enabled to raise its ugly head.

The argument is made that, because there were no eligible lists established for these several positions, the plaintiffs' situation is *ipso facto* differentiated. I cannot at all follow this reasoning. Assuming that there should have been examination after examination (and I think there might well have been) — with eligible lists thus being regularly established — the absence of such repeated examinations and of such lists does not entitle the plaintiffs, as a matter of compulsory mandate by this court, to the same status as if there had been examinations, as if the plaintiffs had taken them, as if the plaintiffs had passed, as if they had been licensed, and as if they had been appointed. What, if any, redress there may be because of the failure or unwillingness of the board of examiners to conduct the examinations is not presented and need not be determined in this action. Suffice it to say that it is an obvious *non sequitur* to suggest that not taking or failing a prior examination is the factual or legal equivalent of taking and passing a later one, when the later one could not have been taken or passed because as a matter of actuality it has not been held.

*Pendergast* v. *Board of Educ. of City of New York* (273 App. Div. 752, 275 App. Div. 690, affd. 300 N. Y. 524) is the plaintiffs' most hopeful authority. This case was decided without opinion, but a careful study of the record makes plain its complete inapplicability to the instant controversy. The position of teacher-in-charge-of-annex (to which Pendergast was assigned by the board) was not a licensed position and was not required to be filled by competitive examination, and thus of course no examination or license was required of Pendergast to qualify. Moreover, far from providing that there shall be no increase in pay, it was specifically enacted by the board that one assigned to the position of teacher-in-charge-of-annex shall be paid added

compensation for such position during the period of assignment. The issue was whether Pendergast had been assigned by the board — if so, his rights to salary were conceded.

The other claimed precedents relied upon by the plaintiffs are also clearly distinguishable. The temporary instructor in *Dexter* v. *Board of Higher Educ. of City of New York* (293 N. Y. 39), the teacher in *Matter of Chase* v. *Mason* (216 App. Div. 562, affd. 244 N. Y. 545), and the patrolman on probation in *Schneider* v. *City of New York* (178 Misc. 238, affd. 264 App. Div. 855, affd. 289 N. Y. 785) were all regularly appointed in the manner prescribed by law. In *Matter of Sugden* v. *Partridge* (174 N. Y. 87) there was no required examination of the patrolman before his designation to the position of detective sergeant. The nurse at the asylum in *McBride* v. *City of New York* (56 App. Div. 520) and the watchman-caretaker at the disciplinary school for boys in *Gallagher* v. *City of New York* (115 App. Div. 662) were recognized " public emergency " appointments, as that term is defined in the Civil Service Law. In *Koso* v. *Greene* (260 N. Y. 491) the plaintiff was by law exempt from examination. In *Stetson* v. *Board of Educ. of City of New York* (218 N. Y. 301, *supra*) the court held against the plaintiff, precisely because the plaintiff neither passed nor had been exempted from the examination. In *Matter of Moses* v. *Board of Educ. of City of Syracuse* (245 N. Y. 106) and *Matter of Rockwell* v. *Board of Educ. of City of Elmira* (214 App. Div. 431) it was held that there could be no discrimination based on sex in the compensation of teachers doing the same work. In *United Public Workers* v. *Mitchell* (330 U. S. 75, 100) discrimination among civil service employees was held unlawful where based on race, color, religion or political affiliation. In *Matter of Benvenga* v. *La Guardia* (182 Misc. 507, affd. 268 App. Div. 566, affd. 294 N. Y. 526) attempted differentiation in the salaries paid to the Justices of a constitutional court on the basis of the time of their accession to office was struck down as invalid. There may be other material elements of distinction but enough I think has been pointed out to make it obvious that the judicial determinations relied upon by the plaintiffs do not upon analysis support their contentions, any more than do the legislative and by-law enactments — and these the plaintiffs appear constrained to concede are flatly against them.

Now, as to the plaintiff Kraemer. She was assigned in 1943 as the acting-chairman of the department of home economics of the Andrew Jackson High School, and she has continued to serve as such acting-chairman on the basis of repeated assign-

ments. At no time during such period was that department comprised of more than four teachers, including Kraemer. On March 29, 1951, pursuant to an examination held for chairman of social studies (which, over-all, included the subject of home economics within its area of instruction), the board of examiners established an eligible list for such position. The plaintiff Kraemer had passed the examination, coming fourth on the list of six. On September 1, 1952, she was advanced to first place on the list, those who preceded her having been duly appointed. I have held, in considering the cases of Kraemer's coplaintiffs, that assignment of a teacher by his principal to act as chairman of department is not the legal equivalent of appointment as chairman, carrying with it the right of tenure of position or to the increased salary attached thereto. I conclude as well that Kraemer is in no better legal position than her colleagues, for passing the examination and being placed upon an eligible list, without more, is not such equivalent either (*Thomson* v. *Board of Educ.*, 201 N. Y. 457, *supra*). Undoubtedly, Kraemer has recently become eligible for appointment, but she has not yet been appointed. There may perhaps be factual circumstances where it should be judicially mandated that a person in such status be officially appointed to the position. But whether, from the time that she has achieved eligibility, Kraemer has been unlawfully deprived of her position is a matter with which I need not presently concern myself, for she has presented no proof in support of such contention, and her counsel have affirmatively stated that she does not seek to compel the defendant to appoint her or to secure tenure by the judgment of this court. She sues on the same basis as that of her coplaintiffs, and the result must be the same.

I cannot close this opinion without expressing my deep concern as to the state of affairs disclosed by the undisputed evidence in this case. Instead of following a procedure which would most likely result in certification of qualified persons for the positions of the several chairmen of departments — that is, instead of ordering examinations again and again, if necessary, so that existing vacancies might be duly filled — the board of education of the city and the Commissioner of Education of the State have apparently acquiesced in a course of conduct permitting the school principals to assign and reassign unlicensed personnel as acting chairmen, until the temporary assignments thus made appear to have become tantamount, in point of time and effect, although not in law, to permanent designations. That should not be.

The present and future bulwark of our democratic society is a sound educational system for our youth. It may appear trite to suggest (but I do so nevertheless) that it is from the students in our high schools today that the leaders of our community are to be chosen tomorrow. It seems to me quite precarious and short-sighted to ignore the view that these students and this community are obviously entitled to protection now. The policy I here deprecate clearly weakens if it does not deprive them of that protection. Only qualified, competent, licensed teachers should be permitted to teach these students; and (except in cases of a truly temporary emergency — *Matter of Jaffe* v. *Board of Educ. of City of New York,* 265 N. Y. 160) only qualified, competent, licensed chairmen should be permitted to plan, organize, supervise and administer that teaching. If these plaintiffs or some of them have not rendered satisfactory service as acting chairmen, and were not competent to pass the prescribed examinations for the required licenses for appointment as chairmen, then they were not competent to act as chairmen. To have them continue to act notwithstanding their inability to obtain licenses is a sad commentary upon the policy in that regard of the authorities in charge of our pedagogic establishment. But if these acting chairmen have through the years rendered additional and satisfactory services, all enuring to the benefit of the school system, the community has been enabled to obtain valuable services over extended and continuing periods of time without making some just provision for extra compensation for that special work. It is no adequate moral answer to say that the teachers thus assigned have received certain benefits from these designations. The fact is that they have not reaped the desired and justified financial rewards as well, and the board itself has recognized that (in addition to the nonpecuniary advantages) a duly licensed and duly appointed chairman is entitled to a scheduled increase in compensation.

Nor is it an answer in the realm of good conscience to say that budgetary problems in the governmental sphere of public pedagogy have compelled the adoption and maintenance of this procedure. In the last three decades and more, the board — when put to it — has had occasion, with the State and the city in appropriate co-operation, to surmount similar financial obstacles. Where there was a will, there was a way. Up to now, there seems to have been no will in this matter — probably because the courts are legally powerless to create one. The Legislature, the board, the commissioner, should not continue to ignore the danger or to perpetrate the injustice. The main-

tenance of this anachronism is unfair both to teachers and to students. In my view, the subterfuge which has come to light in this litigation is morally wrong and scholastically hazardous. I should have supposed that the generally fine educational system of the great City of New York would be the last place where this would be tolerated, for we deal here with one of the largest communities in the world, having the greatest potential if not actual instructional and financial resources available anywhere.

I regret that I am presently helpless to condemn this state of things as a matter of law. Unhappily for me, as for some of the plaintiffs, all that I can judicially do is to view with alarm and point a warning finger — for " equity must follow the law ", and even a court of equity cannot substitute grounds of fairness or of conscience or of peril or of risk for clear and incontrovertible legal fiat. There is nothing intrinsically illegal in the by-laws of the board of education providing that there shall be no increase in the rank or the pay of those teachers who are assigned by their principals to serve as acting chairmen of departments. And I am constrained by statutory limitations and precedential decisions to declare that, no matter how extended the sum total of a teacher's temporary assignments as acting-chairman thus made may be, he is not — under the facts here presented — entitled to any additional salary for having voluntarily served as acting chairman.

Findings of fact and conclusions of law have been passed upon. Submit, on notice, decision and judgment dismissing the complaint on the merits. Exhibits may be obtained by respective counsel from the clerk of the part.