Fuchsberg, J. (concurring in part and dissenting in part).
I would reverse the order of the Appellate Division and reinstate the judgment at Trial Term as to the 16 positions with which it treated. As to the remaining 86 positions, I would concur in their remittal to Trial Term for consideration of whether they were properly classified.
In dealing with matters involving entry into public employment we must always begin by reminding ourselves that this is not an area where administrators, Judges, or even legislators, have wide latitude in determining policy. It is not they, but the People speaking through the Constitution, who have decreed that "[appointments and promotions in the civil service of the state and of all the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, as far as practicable, by examination which, as far as practicable, shall be competitive” (NY Const, art V, § 6). From this constitutional imperative there must be no flinching for "[i]f the beneficent merit system with competitive examinations is [undermined] * * * not alone might incompetence be thus permitted, but favoritism or discrimination might thus be enabled to raise its ugly head” (Matter of Board of Educ. v Nyquist, 31 NY2d 468, 473, quoting from Bacon v Board of Educ., 205 Misc 73, 79).
Mindful of this danger and in furtherance of the constitutional mandate, the Legislature has enacted section 41 of the Civil Service Law which enumerates the limited categories of civil servants exempted from competitive examination. It is clear that neither the Constitution nor the Civil Service Law makes any exception for trained professionals generally or for lawyers alone. Indeed, it has been the long-standing practice of a great many governmental employers to require examination before hiring attorneys. Among these is respondent Corporation Counsel, whose department at the time of the institution of this litigation employed 278 lawyers so chosen. Many *508 of these perform functions almost indistinguishable from those in the exempt class.
That certain lawyering qualities may not readily be measured by competitive examination is an insufficient premise for finding "impracticability” in the strict constitutional sense relevant here (see Matter of Fink v Finegan, 270 NY 356, 362-363). Nor is the fact that the position will require the exercise of judgment and discretion, or the assumption of individual responsibility of the kind which characterizes most legal employment, in itself a reason for exemption. Numerous nonlegal governmental positions call upon similar qualities. So it is no disparagement of the often unique attributes of members of the Bar to recognize that a significant share of their skills are measurable by examination. Indeed, at the entry stages of their careers—particularly before, during, and at the end of their educations—they are subjected to an examination process at least as rigorous as that of any other vocation.
As I read subdivision 2 of section 41 of the Civil Service Law each time an exempt position falls vacant, its classification is to be restudied in order to determine whether a recognizable reason for continued exemption exists. Such reasons may be that the appointee will have a truly confidential relationship with the head of an agency (i.e., be his or her deputy), that he or she is empowered to exercise authority at a high level, that the position involves truly unusual skills not measurable by ordinary testing, or—in some rare cases—that it bespeaks mastery of an expertise so much in demand that the ordinary advertisement of a civil service opening is unlikely to attract applicants.
In this case, it does not appear that the New York City Civil Service Commission consciously applied these criteria in finding that an appointment in the Law Department should be exempt. To the contrary, evidence introduced at the trial indicates that, at least in regard to the 16 positions actively litigated, the commission’s decisions were relatively perfunctory. For each of them the determination, almost as a matter-of rote, was framed in the following identical, nonevaluative, conclusory language: "In accordance with the case of Byrnes v Windels [265 NY 403], persons employed as Assistant Corporation Counsels are Deputies of the Corporation Counsel. By virtue of the Civil Service Law, such deputies should be in the Exempt Class. * * * The language of [chapter 16 of the New *509 York City] Charter contemplates that the Corporation Counsel shall appoint exempt assistants to assist him in carrying out administrative policies. As legal advisor to the Mayor and other city officials on many questions of administrative policy, the Corporation Counsel should not be restricted in his choice of assistants to eligibles on a civil service list.”
The substance of this manner of determination was found to be "sparse and somewhat opaque” at an earlier attempt to try this case. The trial court therefore remanded the matter to the Civil Service Commission so that the reasons for the classifications could be more adequately explained. The commission responded by issuing a statement which sought to detail the unusual characteristics of each position. The statement also attempted to outline the features the positions possessed in common. At the ultimate trial, the Judge reviewed this statement and found that the generalized reasons given were legally insufficient; additionally, upon studying the individualized reasons in the light of the evidence, he concluded that three of the positions were arbitrarily and capriciously exempted. It seems to me that the record amply justifies the trial court’s decision. Although a report issued by the commission is indeed to be accorded the deference described by the majority, three deficiencies are particularly striking.
First, I note the commission’s continued insistence on the concept that all these positions are covered by the statutory exemption prescribed for "the deputies of principal executive officers authorized by law to act generally for and in place of their principals” (Civil Service Law, § 41, subd 1, par [b]). Relying on Matter of Byrnes v Windels (supra), it asserted that all Assistant Corporation Counsels fit this description. That case, decided in the depths of the Depression, as the majority agrees, was correctly found inapposite below. It dealt with the question of whether an Assistant Corporation Counsel could be protected by special laws safeguarding publicly employed veterans against dismissal without a hearing. In that context, these were held to be among the "deputies” who could be terminated summarily. Byrnes did not attempt to interpret the sections of the Civil Service Law dealing with exemption from examination. It did not deal with a clause having the requirement of full delegation of powers that appears in section 41 (subd 1, par [b]). Furthermore, it specifically indicated (at p 407) that merely designating an employee *510 as a deputy was insufficient for him to be so considered in terms of the Civil Service Law. In view of the finding of fact by Trial Term that none of the positions in question had such broad delegation of powers—a finding in accord with the opinions expressed by the Judges who earlier had heard aspects of this case—it is clear that the commission’s reliance on section 41 (subd 1, par [b]) was erroneous as a matter of law.
Even more lamentable is the second deficiency in the commission’s expressed reasons for its determination: that the Corporation Counsel, in order "to implement and reflect, within the limits of the law, the social, economic, and political philosophy of the incumbent Administration” is entitled to select attorneys who have an "identity of approach and a sympathy of purpose” with him. It is difficult to see in this anything other than an invitation to reinstitute the patronage system which a competitive civil service was intended to supplant. It is axiomatic that "political philosophy” cannot be a valid basis, under our State Constitution, for choosing public officers at this level. While Trial Term found no evidence that political factors tainted the 16 employment decisions actively in contention here, it must still be reiterated that this can never be the proper grounds for a Civil Service Commission exemption.
The third deficiency involves the more specific qualities which, according to the commission, made it "impracticable” to examine for these positions. In reviewing an administrative determination courts may not, of course, replace an agency’s evaluation of the problems within its scope of authority with their own. However, it seems to me that, as discussed at length in the opinion of Mr. Justice Harry B. Frank at Trial Term, the evidence could compel no other decision but that the three positions the judgment ordered open to competition had not been properly exempted, even when measured against the commission’s professed goals of looking for previous expertise or unusual, nonmeasurable skills.
Judges Jasen, Gabrielli and Jones concur with Judge Cooke; Judge Fuchsberg concurs in part and dissents in part and votes to modify in a separate opinion in which Chief Judge Breitel and Judge Wachtler concur.
Order modified, without costs, and the matter remitted to Supreme Court, New York County, for further proceedings in *511 accordance with the opinion herein and, as so modified, affirmed.