In the Matter of LOUIS M. JAFFE et al., Appellants, against THE BOARD OF EDUCATION OF THE CITY OF NEW YORK et al., Respondents.

(Argued May 22, 1934; decided July 3, 1934.)

*Harry Reiss* and *Samuel E. Schrier* for appellants.

*Paul Windels, Corporation Counsel* (*Henry J. Shields* and *Paxton Blair* of counsel), for respondents.

CROUCH, J. The petitioners are licensed teachers whose names are on eligible lists for appointment in accordance with the provisions of the Education Law (Cons. Laws, ch. 16), section 872, to positions in the day high schools of the city of New York. None of them is among the first three persons on the lists. Two are on the history eligible lists, being number 13 and number 22, respectively. There are seventy-nine vacancies in history. One is number 29 on the English eligible list for women. There are one hundred and forty-seven vacancies in English. One is number 31 on the elocution list. There are twenty-nine vacancies in elocution.

The record is silent as to what constitutes a vacancy. We take the explanation of the term as given in the petitioners' brief. It apparently refers to a teaching position for a class or classes created by the Board of Education to which no regular appointment has been made. It appears that for some time past, the Board of Education has temporarily assigned these petitioners and others like them to teach these classes. When so assigned they are characterized as substitute teachers. Although they are on the eligible lists, their service as substitute teachers carries with it none of the rights of tenure, pension or statutory salary which go with an appointment under section 872 of the Education Law. They are paid a per diem of $7.50.

The petitioners brought this proceeding for a peremptory order of mandamus to compel the Board of Education to cease the use of substitute teachers above described; to compel the Board of Superintendents to recommend for appointment to such vacant positions these petitioners and those having precedence of them on the eligible lists in history, English and elocution; and finally to compel the Board of Education forthwith to appoint these petitioners and those having precedence of them on said lists to such vacant positions, on the recommendation of the Board of Superintendents, for a probationary period at the annual statutory salary rate.

The order granted by the Special Term was reversed and the motion denied by the Appellate Division.

The problem confronting the Board of Education, at least in its broad aspect, is obvious. Economic and social conditions have led to a greatly increased attendance in the schools with no corresponding increase in appropriations. Even though funds were available to pay an increased number of regularly appointed teachers, it would seemingly be unwise to appoint them; for when the peak of extraordinary attendance shall have been passed — if it has not already been passed — the city might find itself saddled with a large number of life appointees for whose services it had no use. Power to meet such an emergency by resort to some such expedient as it has used, the Board of Education should have. But, differing with the Appellate Division, we fail to find anywhere a grant of such power, either express or fairly implied. As the emergency was unforeseen, so the need of power to meet it was unforeseen. Substitute — or as they are sometimes called — supply teachers have been used time out of mind; but only to take the place temporarily of absent regular teachers or to meet a sudden and momentary emergency created by the death or removal of a regular teacher. While we find no express authority even for that practice in the statutes,

the necessity for it has been common and generally recognized, so that it may fairly be said to fall within the general omnibus provisions of section 868 of the Education Law. But those provisions may not be stretched to cover the practice here in question. We are told that there are twelve hundred so-called substitute teachers employed in the day high schools in the city. If that is lawful, then by the same reasoning the entire teaching staff might conceivably be so employed. In the face of the mandatory provisions of section 872 of the Education Law, that may not be. If the Board of Education cannot solve its problem by means of appointing and then discontinuing the service of probationers within the provisions of that section, relief must be had from the Legislature.

The foregoing views, however, are not decisive of this particular proceeding. Whether and when to appoint teachers in the manner provided by section 872, rests in the sound discretion of the Board of Education. It is given the power and it is its duty " to appoint * * * such * * * teachers * * * as said board shall determine necessary for the efficient management of the schools." (Education Law, § 868, subd. 2.) How many teachers shall be appointed, for what classes and in what subjects and when, depend upon the judgment of the Board of Education as to what efficiency under any given set of circumstances demands. Efficiency is not determined mechanically by the number of teachers. Other matters are embraced in the concept. The mere existence of the so-called vacancies in history, English and elocution does not *ipso facto* cast an absolute and mandatory duty upon the Board of Education to fill them or any of them regardless of other considerations. If this court were to order the Board of Superintendents to recommend and the Board of Education to appoint these petitioners and those who precede them on the eligible lists, it would be substituting its judgment and discretion for those

of the two Boards, and it would be doing so without any data to guide it. This it cannot legally do.

Since the petitioners have shown no clear legal right to the relief prayed for, the order of the Appellate Division was right and should be affirmed, with costs.

LEHMAN, J. (concurring in result). I agree that the order of the Appellate Division should be affirmed. I differ, however, with much of that part of the opinion of CROUCH, J., which discusses the power of the Board of Education to appoint substitute teachers. The Education Law is intended to provide a complete system of control of the schools of the city by the Board of Education. Section 868 of that statute confers upon Boards of Education comprehensive powers for that purpose. Among those powers are: " (2) To create, abolish, maintain and consolidate such positions, divisions, boards or bureaus as, in its judgment, may be necessary for the proper and efficient administration of its work; to appoint a superintendent of schools, such associate, district and other superintendents, * * * teachers * * * as said board shall determine necessary for the efficient management of the schools." Section 872 of the Education Law provides the manner in which appointments as teachers shall be made. Where applicable, the provisions of that section are mandatory, and may not be evaded in any manner by the Board of Education. That section becomes applicable, however, only after the Board of Education has determined to make an appointment to a position as teacher which is included within the purview of the section. As the opinion of CROUCH, J., points out, when sections 868 and 872 are read together, it is evident that the Board of Education has power to determine how many teachers should be appointed to such positions, and when such appointments shall be made, and until such decision has been made, the Board of Education may not be compelled by court order to

exercise its discretion in a manner which the courts might deem proper. Discretion in this regard is confided solely to the Board of Education.

In arriving at a determination of whether the appointment should now be made to permanent positions as teachers, the Board of Education is faced with a difficult situation. The Board of Education must maintain the schools with funds appropriated by another body for that purpose. Where the appropriation is insufficient to meet the salaries of additional teachers, the Board of Education cannot properly appoint such additional teachers. In this case, the appropriation to meet the budget of the Board of Education may be sufficient to permit the appointment of some additional teachers for the high schools, but is insufficient to cover the salaries of all the teachers who may be necessary for the proper administration of those schools. The problem is complicated by the fact that in recent years of economic depression from the peak of 1928 and 1929, there has been an unusual increase in the number of high school students. Quite probably a return of prosperity will result in a decrease in that number. In that case, if appointments are now made to permanent positions as teachers, the Board of Education may in the future find that there are more high school teachers than can be properly used in the schools.

The Board of Education has determined that the best way to meet this situation is to create additional positions of substitute teachers who may be assigned to classes in the high schools for which no permanent teacher has been appointed. These substitute teachers receive a smaller remuneration than is provided by law for teachers appointed to permanent positions, and the tenure of the substitute teachers is purely temporary. That constitutes the solution of the difficult problem which, in the opinion of the Board of Education, will best serve the interests of the schools. The question remains

whether the Board of Education has any power under the Education Law to make such appointments of substitute teachers. Otherwise the Board of Education must adopt a different solution, or the problem must remain unsolved.

Assuming that in this proceeding we should pass upon that question, it seems to me that under the Education Law the Board of Education has the power to appoint such substitute teachers. Certainly the powers granted to the Board of Education under section 868 are broad in scope, and power to create the position of substitute teachers falls within such powers, unless these powers are restricted by section 872. Appointment of teachers under section 872 must, as I have pointed out, be made to permanent positions. If that section is construed to mean that no teachers may be employed to step in temporarily to teach classes for which no regular teacher has been appointed or where the teacher regularly appointed is temporarily incapacitated, the proper administration of the schools becomes impossible.

At all times some regular teachers will be temporarily absent from their classes, and there will be some vacancies in the regular teaching staff, pending appointments in place of teachers who have died or been removed. Obviously, it is the duty of Boards of Education to provide for such a situation, and as the opinion of CROUCH, J., points out, from time out of mind it has been the custom to appoint substitute or supply teachers who may be called upon to teach during the time when no regular teacher is for such reasons available. It would be unreasonable to construe section 872 as intended to render illegal the employment of such substitute or supply teachers. It seems to me quite clear that that section was intended to apply only to the appointment of regular teachers, and that under the omnibus provisions of section 868, the Board of Education still has power to employ substitute teachers, at least for such purposes.

Now the Board of Education is employing substitute teachers because in its opinion a situation has arisen during which sufficient regular teachers cannot or should not be appointed necessary to supply all the classes of the schools. It is clear to me, as it is to my associates, that in enacting section 872 of the Education Law the Legislature intended to abolish insecurity of tenure for all regular teachers in the schools. Substitute or supply teachers may be employed only where regular teachers are not available, and when the Board of Education exercises the power conferred upon it under section 868 of the Education Law to appoint such teachers " as said board shall determine necessary for the efficient management of the schools " it may not evade its duty, in proper case, to appoint regular teachers with security of tenure by the device of employing substitute teachers in place of regular teachers. Here, however, there is good ground for believing that the appointment of regular teachers would not promote the best interests of the schools, and under the circumstances are not necessary for the efficient management of the schools. Indeed, it would appear that the Board of Education cannot appoint regular teachers sufficient to care for all the classes without exceeding their appropriations and interfering with the efficient management of the schools. As the opinion of CROUCH, J., points out, the Board of Education cannot in these circumstances be directed to appoint more regular teachers. If they do not appoint more regular teachers then there are not sufficient regular teachers to conduct all the classes in the public schools. In such case, it seems to me that the Board of Education by clearest implication, if not by the express terms of section 868, has power to employ substitute teachers, so that these classes shall not be left without teachers until sufficient regular teachers are appointed.

I do not mean to imply by what I have said that the courts may not in proper case inquire whether the Board

of Education is exercising its power to appoint substitute or supply teachers for the purpose of evading the provisions of the law which require a security of tenure for all regular teachers. There may be cases where it appears quite clearly that a substitute teacher is in fact employed as a regular teacher, but without compliance with the statute. Then perhaps the courts may say that failure by the Board of Education to appoint to a regular position constitutes an arbitrary act. Until that time arrives, the employment of substitute teachers is, in my opinion, within the powers of the Board of Education.

POUND, Ch. J., CRANE, O'BRIEN and LOUGHRAN, JJ., concur with CROUCH, J.; LEHMAN, J., concurs in result in opinion in which HUBBS, J., concurs.

Order affirmed.