In the Matter of the Application of PHILIP FRANKLE, Petitioner, for an Order against BOARD OF EDUCATION OF THE CITY OF NEW YORK and HAROLD G. CAMPBELL and Others, Constituting the Board of Superintendents, Respondents.

Supreme Court, Special Term, New York County, April 17, 1940.

*Frankle, Ashe & Rifkin* [*George Rifkin* and *Max H. Frankle* of counsel], for the petitioner.

*William C. Chanler, Corporation Counsel* [*Nicholas Bucci* of counsel], for the respondents.

SCHMUCK, J. Dissatisfied with the intentional innocuous desuetude of the respondents, petitioner brings this proceeding to compel the board of superintendents and the board of education of the city of New York, legal appointing authorities, to fill vacancies existing in the position of teacher of fine arts in the city high schools. The petitioner is employed as a substitute teacher of fine arts in the Abraham Lincoln High School, and is fourth on the men's eligible list for teachers of that subject. There are at present a large number of vacancies in regular positions as teachers of fine arts and such number concededly exceeds the number of names on the two eligible lists. These vacancies are now filled temporarily by the assignment of substitutes. At this point it is not amiss to note that vacancies in the positions under consideration have existed for more than six months.

The Education Law, as applicable to this city, provides, by a recent amendment (§ 872, subd. 1-a), that " Appointments shall be made from appropriate eligible lists to fill all existing vacancies not later than six months from the date of the existence of such vacancy." This amendment to the statute was effected by chapter 916 of the Laws of 1937 peradventure to convert a situation alluded to in *Matter of Jaffe* v. *Board of Education* (265 N. Y. 160).

Respondents argue that the language while mandatory on its face, should be read as discretionary. The difficulty with that proposition is that the interpretation thus advanced makes the section meaningless. It was not necessary to enact legislation in order to give the board of education the power to fill vacancies. That is its natural and obvious duty. Nevertheless, a study of the significance of the statute, in a sense, furnishes a key to the problem raised by the petition. That legislation can be properly understood only in the light of the circumstances which dictates it.

In 1934 a substitute teacher who was on the eligible list for appointment in the high schools questioned the right of the board to hold back his appointment from the eligible list and thus deprive him of the advantage of tenure pension rights, etc. The court disapproved and condemned the practice but declined to interfere with the discretion of the school board. (*Matter of Jaffe* v. *Board of Education, supra.*) The logic of that decision rests only upon one circumstance which it is sought to introduce in this proceeding as well. The court recognized that while a supply of substitutes was necessary to take the place of temporarily absent regular teachers so as to meet emergencies, the practice carried to extreme might lead to a *reductio ad absurdum.* If, for example, as in that case, 1,200 substitute teachers could be employed in the day high schools in place of regularly qualified teachers who were available, practically the entire teaching staff could thus be replaced, in the interests of economy, and the provisions of the Education Law nullified by providing a staff of stop-gap or supply teachers in place of a regular staff. Nevertheless, the court refused to grant relief because the question of the number of substitutes to be replaced by regular appointees was one involving responsibility of management of the board of education. As here, the point was raised that owing to the unexpectedly large influx in the registration of pupils by reason of economic depression, the number of vacancies suddenly created might be deemed of a temporary character subject to readjustment when conditions would become stabilized. Rather than appoint a large number of new teachers and thus create an excess when conditions became normal, the board might deem it wiser to appoint substitutes to be employed until such time as the situation might become stabilized again.

The failure to fill a given number of vacancies or restrict in large measure the number to be appointed might involve a policy of doubtful educational expediency, largely outweighing the small measure of economy accomplished thereby. A matter of this nature the courts have recognized to be more within the purview of the scope of the power to review of the State Commissioner of Education whose prerogative to review educational policy of the school board transcends the powers of the court and indeed, when a similar proceeding for the filling of a vacancy was brought before the Commissioner of Education (*Matter of Vanderwoude,* 50 St. Dept. Rep. 199), he held that the general practice of assigning substitutes instead of making regular appointments to fill vacancies was improper and ordered it to be discontinued. It may well be noted that this interpretation of the effect of the *Jaffe* and *Vanderwoude* decisions (*supra*) is unqualifiedly conceded by the respondents.

In discussing the contention of the board of education that the lack of funds prevented it from making regular appointments and thus compelled the assignment of substitute teachers, the Commissioner aptly remarked that the burden of lack of available funds to properly conduct the schools of the city should not be borne by the group of substitute teachers alone. This human element intimated by the Commissioner had additional and far-reaching implications which will be alluded to later. One feature of his opinion is intriguingly interesting in pointing out that the effect of employing substitutes was to change the name of a position without changing its duties. It was in effect paying a lesser salary for the services than directed by statute and thus nullifying the salary schedules.

Respondents urge as one of their defenses that the filling of the vacancies involves educational policy the adoption of which by the school authorities was in their discretion and could only be reviewed by the Commissioner of Education. The appeal, they say, should be relegated to the Commissioner of Education, and petitioner, therefore, has mistaken his remedy by resorting to the courts. This argument has been rendered entirely obsolete and futile by the amendment to the Education Law (§ 872, subd. 1-a), which undoubtedly was adopted as a result of the Legislature's expressed intention to lay down educational policy in the matter of filling vacancies. Before the enactment of the statute adverted to, some weight might have been given to the contentions of the respondents as to the necessity of appealing to the Commissioner of Education. The legislative direction, however, has laid down the educational policy and the courts must recognize this legislative mandate and not wait for the Commissioner to interpret it. The period of six months provided in the statute allows ample leeway to the educational authorities to determine whether an existing vacancy is only of a temporary character or one that is likely to continue diuturnally.

The court recognizes that the registration of the school population is not constant and vacancies might cease to exist by reason of a decrease in such register, a consolidation of classes or an abolition of the subject. The argument for postponing appointments even in the face of statutory direction may affect the fringes or the tail end of an eligible list or the relatively low positions on the list of vacancies. Needless to state in the immediate case, however, no such situation can possibly exist for the petitioner is No. 4 on the eligible list. It is only reasonable to expect that vacancies should be filled at the very least to include persons approximately in his position on such eligible list.

Respondents have pleaded four affirmative defenses and unless they propose a controlling reason in opposition, the application must be granted. Petitioner has moved to strike out these defenses. The first raises the question that the board is making comprehensive studies anent economies so as to provide funds for the purpose of the appointments. They urge that their study is not complete. They also argue that if regular appointments are made to positions which may soon have to be abolished, the result would hamper the necessary studies. It is hardly necessary to discuss this defense in view of the substantive rights to which persons on the eligible list, for which more or less certain vacancies exist, are entitled. The second defense, that petitioner's position on the eligible list confers on him no absolute right to appointment, may be true, but it is no answer to the requirement of the law that his name and those of others ahead of him, and to a reasonable extent those below him, should be certified for appointment. The third defense is as to the inadequacy of the budget and the present inability to determine how much money will be available for the years 1940 to 1941. That defense might operate against filling bottom vacancies because of the uncertainty as to how many positions might be definitely considered as permanently open. It has no application to this situation. The fourth defense speaks of the adequacy of remedy upon an appeal to the State Commissioner of Education. That argument has been rendered worthless and specious by the 1937 amendment referred to above. Another defense noted in the brief should perhaps be considered. It is requested that in the exercise of discretion this proceeding under article 78 of the Civil Practice Act, which is analogous to the old mandamus order, should be denied. If the petitioner had any other remedy the argument might occasion some consideration. In such cases as *Matter of Coombs* v. *Edwards* (280 N. Y. 361) and *Matter of Black* v. *O'Brien* (264 id. 272), where mandamus was denied in the exercise of discretion, the petitioner was not without alternative remedies. Where, however, an order under article 78 is the sole remedy which may give petitioner any relief, the rule of discretion should not be blindly followed. In this connection the recent opinion of Mr. Justice LEVY in *Matter of Craig* v. *Board of Education* (173 Misc. 969), is pertinently applicable. It follows that the motion to strike out the separate defenses must be granted.

Before rendering a final decision the court assumes the privilege of indulging in certain observations and hopes thereby to establish the ill-advised effect of the alleged money-saving policy attempted herein. Economy is a civic virtue, but no matter how praiseworthy must not be permitted to defeat civic aims. It is hardly conducive

to efficient work to have persons fully qualified and who have passed rigid educational tests and who are available for appointment to fill vacancies, kept in the status of stop-gap employees at salaries considerably lower than those to which they would be entitled if appointed from the eligible list. In spite of their qualifications they lose the opportunities for early tenure, for acquisition of pension rights and for adequate salary status under the law. Their only offense is that they were born about a decade after their fellow teachers of equal qualifications who have achieved the desirable status. Economy of this cheese-paring variety is not alone taking undue advantage of our young teachers but ultimately must affect the efficiency of the entire system. Many substitute teachers of high qualification undoubtedly fall by the wayside because they become discouraged waiting for the millennium of a permanent appointment. The hardy spirits who finally succeed in securing a place many years after the period of adolescent enthusiasm has been chilled by disappointment, must needs postpone their retirement under the pension system to a period when their efficiency is impaired, in order to become entitled to a reasonable retirement allowance. This necessarily creates in the end a large proportion of superannuated teachers.

These observations are not intended to serve as a full analysis of the far-reaching implications of the present policy, which if persisted in, cannot but result in serious impairment of the efficiency of the personnel of the school system. Observations of this character should serve for all interested in clarifying the difference between wise economy and prudent expenditure on the one hand and extravagance and waste on the other. A penny wise and a pound foolish policy inexorably leads to universal discontent and what is more experience condemns it.

Motion granted. Settle order.