In the Matter of the Application of SAMUEL JACOBSON and Others,
Petitioners, for an Order against THE BOARD OF EDUCATION OF
THE CITY OF NEW YORK and Another, Respondents.

Supreme Court, Special Term, Kings County, December 3, 1941.

*Mandel & Mandel* [*Austin C. Mandel* of counsel], for the
petitioners.

*William C. Chanler, Corporation Counsel* [*Nicholas Bucci* of
counsel], for the respondents.

LEWIS, J. This is an application pursuant to article 78 of the
Civil Practice Act (1) to compel the board of superintendents to
recommend for each vacancy in Spanish one of the three persons
highest on the appropriate eligible list; and (2) to compel the board
of education and the board of superintendents to terminate all
appointments of persons assigned to teach Spanish classes unless
such persons have been duly licensed.

Petitioners are on the eligible list promulgated in December, 1936, to teach Spanish in the day high schools. Respondents admit that a certain number of regularly appointed teachers have been assigned to teach subjects for which they do not hold specific licenses.

In *Matter of Sokolove* v. *Board of Education, N. Y. City* (176 Misc. 1016), an action was brought to compel the appointment of petitioners as teachers of home economics. The first affirmative defense was based on the resolutions of the board of education (adopted on July 9, 1941, and made a part of its by-laws), which authorize the superintendent of schools to assign a regularly appointed teacher to service for less than half time in a subject not specifically covered by his license. The court held that such resolutions disregard the requirements of subdivision 5 of section 872 of the Education Law and circumvent the constitutional mandate providing in section 6 of article 5 of the Constitution of the State of New York for appointment according to merit and fitness.

I am in substantial accord with that opinion. Subdivision 5 of section 872 of the Education Law provides that the board of education shall designate the kind and grades of licenses which shall be required for positions on the teaching staff, " together with the academic and professional qualifications required for each kind or grade of license. No person required to have a license under the provisions of this chapter in order to be employed in a position who does not have such license shall have any claim for salary."

The respondents admit that the board of education has enacted by-laws which provide for the issuance of separate licenses to teach French, German, Italian, Spanish, etc., and that the professional requirements for teachers in each of those subjects, as set forth in the by-laws, differ in some respects from each other. Whether the board has power to prescribe licenses entitling the holder to teach several languages is not before us, for it has not done so. Having prescribed a separate license for each language, the board cannot assign a teacher to teach a language other than the particular one for which he is licensed. The board, however, may assign to teach Spanish those teachers of French who previously had secured permanent licenses in Spanish. Those teachers have continued in the employ of the board of education. Under subdivision 15 of section 70 of the by-laws of the board of education their licenses in Spanish continue to be valid. Presumptively, therefore, they remain qualified to teach Spanish despite their respective assumption of a different teaching duty under a French license.

Section 6 of article 5 of the Constitution of the State of New York provides that appointments in the civil service " shall be made according to merit and fitness to be ascertained, so far as practicable, by examinations, which, so far as practicable, shall be competitive." Respondents urge that the procedure adopted by the board of education merely involves the transfer of persons previously appointed after competitive examinations and hence does not violate any constitutional requirements. This argument erroneously assumes that a license in one subject establishes " merit and fitness " for another subject because the *technique* of teaching is the same for both. But " merit and fitness " also presupposes knowledge of the subject in question. That knowledge is to be tested by examination conducted by the board of examiners. (Education Law, § 872, subd. 1-a.) The requirements of section 872 of the Education Law and of section 6 of article 5 of the Constitution of the State of New York are not met by the procedure set forth in the new by-law of the board of education and the accompanying regulations for conducting tests, beginning in the fall of 1942, to qualify a teacher for service in a subject beyond the specific scope of his regular license.

Respondents state that this by-law is but an extension of a regulation adopted by the State Commissioner of Education and in force several years, providing as follows: " The Commissioner of Education may authorize the holder of a valid certificate to teach a subject not covered by his license for a period not to exceed five classroom hours a week provided the request is made by the Superintendent of Schools within whose jurisdiction the holder of such certificate is teaching."

There is a dispute as to whether the commissioner's authority to permit " the holder of a valid certificate " to teach a subject not covered thereby extends to the city of New York. Respondents refer to the affidavit of Herman Cooper, Assistant Commissioner for Teacher Education in the State of New York, as supporting their view that it applies in New York city. In fact, that affidavit seems to assume that the regulation affects teacher assignments *outside* the metropolitan area. However, even if the regulation applies it cannot avail respondents because there has been no " request " for the commissioner's authorization as provided therein. Respondents urge that the authorization of the commissioner is merely an administrative act and general consent is sufficient. Such consent, however, may not be implied from the fact that the board of education has made out-of-license assignments without apparent objection by the Commissioner of Education. In any event, the same reasons invalidating the afore-

mentioned by-law of the board of education affect the validity of this regulation.

The comprehensive powers given to the board of education by section 868 of the Education Law are subject to the mandatory provisions of section 872. (*Matter of Jaffe* v. *Board of Education,* 265 N. Y. 160.) Respondent's practice of appointing teachers out of license, as already stated, contravenes the latter section. Such appointments cannot be justified on the theory that they are mere transfers not within the purview of section 872.

Respondents also state that in order to keep within the limitations of the budget it has decreased the number of teaching positions and has determined not to make any further appointments of teachers of academic subjects, including Spanish, in high school. The discretion vested in the board to abolish positions does not authorize the illegal filling of those which it has retained.

Section 890 of the Education Law, which provides for appeals to the Commissioner of Education in consequence of acts of the school authorities, does not preclude redress to the courts in a proper case. Respondents are filling positions in the high schools contrary to law. A proceeding under article 78 of the Civil Practice Act is proper and will be entertained. (See *Matter of Frankle* v. *Board of Education of N. Y. City,* 173 Misc. 1050; modfd., 259 App. Div. 1006; affd., 285 N. Y. 541.)

The appointment or assignment to teach Spanish of persons who have no Spanish license is illegal. The denial, however, of the existence of any vacancies requires the issuance of an alternative order.