JOHN C. DONOHUE, Plaintiff, *v.* BOARD OF EDUCATION OF THE CITY OF SYRACUSE, Defendant.

Supreme Court, Onondaga County, August 12, 1943.

*P. Sidney Hand* for plaintiff.

*James C. Tormey, Corporation Counsel (John F. Hmiel* of counsel), for defendant.

SEARL, J.   Plaintiff brings this action for services rendered from the 16th day of May, 1942, to the 15th day of April, 1943. The action was referred to Hon. ERNEST I. EDGCOMB, Official Referee, and on his death came on for trial, by stipulation, before this court without a jury.

The 76th Congress appropriated for the fiscal years ending June 30, 1940, and June 30, 1941, for the use of the Federal Security Agency, Office of Education, the sum of $15,000,000. (54 U. S. Stat. 632. [See, also, $26,000,000 appropriation in 54 U. S. Stat. 1033.])   The 77th Congress for years ending June 30, 1942 [$52,400,000, 55 U. S. Stat. 476], and June 30, 1943 [$94,000,000, 56 U. S. Stat. 579], appropriated additional sums for payments to States or other public authorities for the purpose of vocational education of defense workers.

State boards for vocational education were constituted the authority for phases of the training program within the States, subject to the approval of the Federal director, so far as the same related to the administration, co-ordination and supervision of the work.   [U. S. Code, tit. 20, § 16 *et seq.*]

The Board of Education of the City of Syracuse made application for permission to conduct a portion of the program and for an allocation of Federal funds in connection therewith.

The State of New York issued a syllabus or guide to local departments of education, which provided in substance that after the application of a local board of education had been approved, and the amount of Federal funds determined for allocation to the local board, it should be the duty of such local board to do the following:

" (1) To appoint the personnel necessary to the conduct of the program, at the rates of pay stated in the application for an allocation of Federal Funds as finally approved by the Education Department."

" All acts of the Board of Education relating to the local defense training program under its jurisdiction shall be entered in the minutes of the meetings of such board."

" The rates of pay for personnel shall be determined by the local Board of Education. These should be at the prevailing rate in the case of all regular staff members who are requested to do defense work outside of the hours of regular service."

" The Board of Education and the Superintendent of Schools shall administer this program, except as herein provided, in the same manner as the regular school program is administered. The usual vocational education administrative official should be in charge and customary policies and procedures should be observed."

The defendant herein made application to conduct such a program and for the necessary funds for that purpose. The application having been approved, it became incumbent upon the Syracuse Board to appoint the personnel necessary to the conduct of the program, as well as to determine the rates of pay.

Neither the State nor Federal authorities undertook to designate the personnel.

Accordingly, at a meeting of the Board of Education of the City of Syracuse, on July 31, 1940, a resolution was adopted approving a salary schedule for principals and teachers in the national defense program.

The plaintiff, John C. Donohue, principal of Blodgett Vocational High School, was designated by the Board as supervisor of the program. In addition to his usual hours and duties, it appears that Mr. Donohue performed services in connection with the above program from the summer of 1940 until

the middle of May, 1942, for which he received pay. From that date until April 15, 1943, he performed similar service, with the exception of minor absentee periods. For this work he has received no pay. The amount thereof, as demanded in the complaint, as amended, and at the scheduled rate, is $1,762. There seems to be no dispute between the parties as to this computation.

The question at issue is whether the defendant is legally liable.

The main defenses interposed are as follows:

First, defendant urges that plaintiff was not duly qualified to act as administrator or supervisor for his failure to hold a "regular vocational certificate", as required by a rule or regulation contained in a typewritten copy of instructions issued by Mr. Oakley Furney of the State Department of Education on June 25, 1942.

The evidence discloses that Mr. Donohue has been engaged in vocational work since the year 1910, that he has been practically a pioneer in and has grown up with vocational training; that in 1904, there was issued to him by the State a principal's and teacher's certificate for life; and that he has served as President of the State Association of Principals of Vocational Training. He states that he has never been asked for any other or further certificate.

Section 553 of the Education Law provides: "The commissioner of education may issue: 1. A life state certificate upon examinations only which shall entitle its holder to teach for life in the public schools of the state without further examination."

A privilege once granted cannot well be revoked. Years ago certificates to practice law in New York State were issued to those who had served clerkships in law offices for prescribed periods without attendance at law schools. Requirements have since been revised; yet no one would think of challenging today the right of attorneys admitted under the old requirements to practice their profession.

Counsel for plaintiff urges that the life certificate to act as principal or teacher is all-inclusive, and is superior to and includes a "regular vocational certificate" as referred to in Mr. Furney's letter.

There is no legal precedent to guide the court in its interpretation of this particular question. Common sense, however, dictates the answer. A man who has been in vocational work for thirty years, who has not only taught the various

subjects included in a technical vocational curriculum in a city the size of Syracuse, but instructed the teachers therein as well, and who was so highly regarded in his line of work as to be chosen State President of Vocational Principals, merits a finding that his life certificate includes the " regular vocational certificate " referred to.

More significant still is the fact that the question of lack of such certificate was not raised by anyone, so far as the record discloses, until this action was commenced. Mr. Alverson and Mr. Kidd, in fact nearly all witnesses called, who have been familiar with the work of Mr. Donohue, certify to his competency and ability. I quote the words of Mr. Alverson, Superintendent of Schools, in his letter (Exhibit 33): " Mr. Donohue was selected not only to run the Defense School but to protect and preserve the equipment in the building. His service over a long period of years has been most satisfactory. In almost every manufacturing plant and store in the City of Syracuse are Vocational High School people who had part or all of their training in that institution."

Counsel for plaintiff urges that the reference to " vocational certificate ", in the letter of Mr. Furney, was discriminatory. In view of the holding of the court, as above set forth, it is unnecessary to consider this question further.

The next defense interposed is that plaintiff, as is claimed, stated to Mr. Kidd and his brother-in-law, Mr. Larsen, when payment for services was discussed, that he, Donohue, would work for nothing. Plaintiff denies making such a statement. The court had an opportunity to observe the manner of the witnesses and the circumstances under which the conversation is alleged to have taken place. The court is convinced that if any reference was made to working for nothing, it must have been in jest. The evidence discloses that plaintiff often worked from 3 P. M. until 6 A. M. and at other periods from 7 P. M. until 6 A. M. If after a period of eight hours' instruction during the day a person undertakes a like trick, without pay, it is certainly contrary to our present day industrial tendency.

The present action is based on contract. The question arises as to why plaintiff continued to work and how the defendant can be held liable for plaintiff's services after Mr. Furney had refused longer to honor payments to plaintiff from Federal funds. It is very apparent from the evidence that the Board of Education, through Mr. Kidd, and their representative, Mr. Alverson, were convinced that Mr. Furney's objection to paying plaintiff was a temporary matter, and that a little time

would iron out the difficulty. The record is replete with such evidence. In Mr. Alverson's letter of July 9, 1942 (Exhibit 33), he states, referring to plaintiff: " I am asking that justice be dealt him * * * I was under the impression that if any mistake were made that it could be corrected without such drastic action as has been taken."

Mr. Kidd, local director of the program, testified that he was in doubt about the authority of Mr. Furney to cut off Mr. Donohue and that he hoped to get a settlement from Federal funds, and so advised Mr. Donohue. Mr. Alverson, the representative and the mouthpiece of the defendant, testified in substance to the same thing.

Defendant contends that the Board of Education has no authority by the laws of New York to hire plaintiff and therefore cannot be held legally liable for any obligation to plaintiff.

Section 868 of the Education Law provides: " Subject to the provisions of this chapter, the board of education in a city shall have the power and it shall be its duty * * * 5. To establish and maintain such free elementary schools, high schools, training schools, vocational and industrial schools, * * * or such other schools or classes as such board shall deem necessary to meet the needs and demands of the city. * * * 10. (a) To perform such other duties and *possess such other powers as may be required to administer the affairs placed under its control and management* * * *." (Italics supplied.)

The defense program came under its control and management because of its own solicitation.

In *Matter of Jaffe* v. *Board of Education* (265 N. Y. 160) Judge CROUCH, interpreting the above section 868, refers a bit caustically to its " omnibus provisions ". Judge LEHMAN agrees with the majority opinion, in part.

Arriving at a conclusion in this case, the court must hold that the Board of Education had authority to undertake the work in question, it was an educational program and, although national in scope, it was " necessary to meet the needs and demands of the city ", as an integral part of the nation. The Board undertook the employment of plaintiff by resolution of the Board. No resolution of the Board appears to ever have been passed discharging plaintiff and, under the provision of the Federal Act, the Board could only discharge by resolution. An implied contract existed to see that plaintiff was paid as long as the Board, exercising its function of adminis-

tration of the program, availed itself of plaintiff's services. He was certainly lulled into a sense of security so far as his compensation was concerned. The Board is rightfully estopped from denying him payment. They invited him or availed themselves of his work at many meetings, received regularly his pay roll reports for those employed by him, and permitted him to interview and place hundreds of workers in defense jobs. He occupied an arduous and responsible position. Had he not done this work, the Board would have been compelled to pay someone else. There was implicit in the long continued acceptance of the services, an implied promise that he be paid. As a workman is worthy of his hire, so Donohue should rightfully be paid for his work.

As the Board has charge of the administration of the program, and as the work has been efficiently performed by plaintiff, as all apparently admit, the Board will probably find some legal way to recoup from the Federal funds available the amount of their own liability. As none of these funds should be wasted, by the same token they should not be enhanced at the cost of the innocent.

Judgment to plaintiff in the amount of $1,762 in accordance with this decision, together with the costs to be taxed by the Clerk.