In the Matter of STEPHEN P. O'REILLY et al., Appellants, against JACOB GRUMET, as Commissioner of the Fire Department of the City of New York, Respondent.

First Department, June 21, 1954.

*Murray A. Gordon* of counsel (*Bernard Jacobson* and *Paul Wilensky* with him on the brief; *Daniel & Bernard Jacobson,* attorneys), for appellants.

*Victor J. Herwitz* of counsel (*Seymour B. Quel* with him on the brief; *Adrian P. Burke, Corporation Counsel,* attorney), for respondent.

BOTEIN, J. Petitioners, who are captains in the fire department of the City of New York, appeal from an order denying their application under article 78 of the Civil Practice Act for an order to review and annul the determination of the fire commissioner designating them to perform the duties of battalion chiefs and to restrain the respondent commissioner from continuing to designate them for such out-of-grade functions and duties.

All of the petitioners are presently captains who have passed the competitive civil service examination for the next higher position of battalion chief. They are on the appropriate eligible list for appointment to the latter position. Petitioners complain that instead of filling vacancies from the eligible lists in the normal, prescribed procedure, respondent in recent years has regularly followed the practice of ordering them and other captains to perform the duties of battalion chiefs, without paying them the salaries carried by the higher positions. For example, it is conceded that petitioner O'Reilly was promoted to

the rank of captain on January 1, 1949, and that ever since he has continuously served full time as an acting battalion chief by " temporary appointment ". The other petitioners have served more than 50% of their working time in stated years as a result of similar temporary designations.

On the record before us it is impossible to determine just how many so-called " permanent " vacancies for battalion chief exist, but such a finding is not essential to a determination of this matter. It is clear that there are some vacancies, on a permanent basis, in those positions. Respondent contends that there are no vacancies for battalion chief because the budget director has issued no budget certificates authorizing respondent to appoint eligibles to that position. It is undisputed that the budget director has approved a quota of 202 battalion chiefs and that the present number of employees holding permanent appointments in that grade is 198, leaving 4 permanent vacancies on the basis of the city's own personnel structure; but the budget director has issued no budget certificates which would enable the commissioner to fill even these four vacancies. Petitioners, by an elaborate formula estimating the number of battalion chiefs regularly deployed to fill vacancies in the still higher position of deputy chief, and by using other factors, estimate that 47 more battalion chiefs are " required ".

However, the personnel requirements of the fire department of themselves cannot enlist the protective arm of civil service. Generally speaking, the civil service does not create positions, but prescribes standards and safeguards for the persons who will fill the positions (*Matter of Ross* v. *LaGuardia*, 287 N. Y. 28). The concern of the civil service program is that " Appointments and promotions in the civil service * * * shall be made according to merit and fitness ". (N. Y. Const., art. V, § 6.) Whether a department is undermanned or overmanned is a matter of internal management and falls within an area into which courts are loath to intrude without specific mandate (*Matter of Walsh* v. *LaGuardia*, 269 N. Y. 437, 442). We therefore do not entertain the issue tendered by petitioners of whether the fire department employs too few or too many battalion chiefs than are necessary to perform their duties adequately. We only consider whether they are employed in conformity with civil service laws and regulations.

For the same basic reasons we must reject the excuse advanced by respondent that he has made and continues to make fruitless requests to the budget director for increased personnel. Of

course respondent cannot make appointments until funds are available to pay salaries; and the requisite funds are released only through the issuance of budget certificates by the budget director. This refusal of the budget director to issue such certificates means that there are no vacancies in the position of battalion chief to which respondent can appoint petitioners permanently from the civil service eligible list. But this impasse cannot be availed of by respondent to fill the positions on a permanent basis without benefit of civil service — even though it is not questioned that respondent is animated by the highest motives and that this procedure is not a ruse to circumvent the civil service restrictions. Such a turn, in less conscientious and responsible hands, could deteriorate into a device fraught with great danger.

Disagreement between a department head and a budget director as to personnel requirements is quite common in government circles. The department head, intent on a record of performance, seeks to augment his staff; and the budget director, equally intent on limiting expenditures, seeks to hold the department head down. This can be healthy interplay; but if it results in giving a department head a free hand in shifting employees out of grade at his own unrestrained discretion it threatens the health of the competitive civil service system. Mr. Justice Cohn's remarks in *Matter of Berger* v. *Walsh* (266 App. Div. 592, 594) are particularly pertinent here: " To permit a department head to ignore the Constitution and statutory provisions because of a belief, though honestly entertained, that the best interests of the community require him to do so, cannot be justified in law."

So the issue does not hinge on the personnel requirements of the fire department nor the inability of respondent to fill the positions from eligible lists. The issue is whether those captains who have been indisputably designated to fill the positions of battalion chief on a practically permanent basis were so designated in accordance with the civil service requirements.

The commissioner relies on the following Regulations for the Uniformed Force of the Fire Department of the City of New York for his authority to make the disputed appointments.

Section 2.1.5: " In the absence of officers of any unit or command, members of the next lower rank may be temporarily designated by the Chief of the Department as acting officers to perform the duties in the higher rank."

Section 3.1.14: " He [the fire commissioner] shall designate members of any rank to perform temporarily the duties required of members of the next higher rank, specifying when necessary the duties to be performed by such members."

The plight of a hapless captain directed to perform full-time duties as a battalion chief at a captain's pay becomes evident from a reading of the following regulation: " 35.3.1. Any member found guilty, after trial, of violating any regulation, command, order or instruction governing the uniformed force, or any law, may be reprimanded, fined by the withholding of pay, be dismissed from the department, or have the sentence suspended, as the Fire Commissioner may determine."

The fire commissioner may promulgate such rules and regulations as are reasonably necessary for the efficient conduct of his department (*Matter of Calfapietra* v. *Walsh,* 183 Misc. 6, affd. 269 App. Div. 734, affd. 294 N. Y. 867; *People ex rel. Rogers* v. *Tinney,* 184 App. Div. 748). But such authorization and the rules and regulations made thereunder are limited by the requirements of the applicable constitutional and statutory provisions. It is fundamental civil service policy that vacancies in the classified civil service shall be filled by permanent appointments from the appropriate eligible list compiled pursuant to the results of competitive examination.

There are, of course, necessary exceptions to this principle. Provisional appointments may be made where eligible lists are not yet available, and temporary appointments may be made in other emergency situations. But these exceptions are intended merely as exceptions.

Since the regulation under which the commissioner acted provided for " temporary " designations, we look to the statute for its operative boundaries. Services may be rendered by an appointee for a temporary period not to exceed one month when the need for such services is " important and urgent " because required by an emergency; in such case the appointing officer may select for such temporary service any person on the eligible list without regard to his standing thereon. A temporary appointment may be made for a period exceeding one month only for the period of the duration of the leave of absence of the position's incumbent, not exceeding one year; or, where it is found that the position will not continue in existence for a period longer than six months; and it is here too provided that " Successive temporary appointments shall not be made to the same position." (Civil Service Law, § 15, subd. 3; see, also, Rules

for Classified Civil Service, rule VIII, subd. 6; rule XIII; Regulations of State Civil Service Commission, reg. IX.)

The circumstances under which a permanent position in the classified civil service may be filled by other than regular appointment from an appropriate eligible list are, as noted, precisely defined, and narrowly confined. It must therefore be concluded that the Legislature and the civil service commission did not intend that other exceptions may be engrafted upon these statutory and regulatory provisions. Unless these exceptions be deemed exclusive and exhaustive, the basic principle of the Civil Service Law, i.e., the filling of vacancies by appointment from an eligible list, becomes meaningless. In relation to the aforementioned limitations contained in Civil Service Law (§ 15, subd. 3) the Court of Appeals has said, '' we believe its provisions are mandatory and may not be evaded '' (*Matter of Hilsenrad* v. *Miller,* 284 N. Y. 445, 449). It accordingly held invalid a civil service regulation which permitted the unlimited extension of a temporary appointment. (See, also, *Matter of Graae* v. *Ahern,* 258 App. Div. 686, and *Matter of Berger* v. *Walsh,* 266 App. Div. 592, mod. 291 N. Y. 220.)

If the regulation relied on by respondent has validity, it must apply only to short-term assignments at a time when there is no employee on the eligible list for battalion chief or where '' the need of such service is important and urgent ''. But there is an appropriate eligible list and the only emergency confronting respondent is one of the budget director's making — hardly the type of emergency contemplated by the statute and regulations (cf. *McBride* v. *City of New York,* 56 App. Div. 520, and *Gallagher* v. *City of New York,* 115 App. Div. 662). The inconclusive record before us ascribes the inability of one public official to make proper appointments to the obduracy of another public official.

The designations of petitioners and others similarly situated were frequent and recurrent, and harden to a pattern for permanently filling the positions of battalion chief. At the least, the appointments extended far beyond the permissive period, even if they were validly made at the outset. We therefore find that they were made unlawfully and in violation of the applicable civil service statutes, rules and regulations. In *Matter of Jaffe* v. *Board of Educ.* (265 N. Y. 160) the majority opinion roundly criticizes the board of education's practice of assigning substitute teachers to carry on work that should have been performed by regularly appointed teachers. The court withheld the relief sought only because it could not assume to

exercise the discretion at that time lodged solely with the board of education. The court did not hesitate to give an affirmative direction in an analogous case after the Education Law was amended in 1937 so as to furnish the legislative mandate theretofore lacking (see *Matter of Frankle* v. *Board of Educ.,* 173 Misc. 1050, mod. 259 App. Div. 1006, affd. 285 N. Y. 541). There can be no doubt as to the legislative ban on the practices complained of in this proceeding.

Petitioners make no claim for back pay nor do they claim that their continued designation without appointment provides them with any right to regular appointment (*Thomson* v. *Board of Educ.,* 201 N. Y. 457). They seek relief only against what they construe as an indicated continuation of these appointive procedures. In response to a letter from petitioners' attorney, respondent replied in effect that he had no other alternative but that he would " continue to urge the Budget Director to make appointments until the Department is fully staffed ". In passing, it might be noted that if the department is understaffed, as respondent contends, the safety of the public requires that the department be brought immediately to its full complement. If, as the budget director probably maintains, the department is adequately staffed, then all unnecessary, unfilled positions should be abolished.

The record lacks sufficient definitive data to warrant making any disposition except one couched in the most general of terms. The continuous and recurrent appointments of petitioners to the position of battalion chief for extended periods of time are declared to be unlawful. The order of Special Term should be reversed and respondent directed to refrain from continuing to make the appointments herein prescribed. More precise provisions will be made in the order to be entered herein. Settle order.

COHN, J. (dissenting). The fire commissioner's action in temporarily assigning petitioners as acting battalion chiefs was necessary for the efficient administration of the department and was neither unreasonable, nor violative of civil service law.

The fire commissioner is the official authorized by law to manage and direct the operations of the fire department. (New York City Charter, § 487; *Matter of Calfapietra* v. *Walsh,* 183 Misc. 6, affd. 269 App. Div. 734, affd. 294 N. Y. 867; *People ex rel. Rogers* v. *Tinney,* 184 App. Div. 748.) As an incident to his power as department head in managing the operations of the fire department, he is specifically authorized to make assign-

ments of duties and to change such assignments " as he may consider advisable ". (New York City Charter, §§ 883, 884.) The Regulations for the Uniformed Force of the Fire Department of the City of New York give to the fire commissioner the power to do the very thing which petitioners would have this court enjoin, viz.: to " designate members of any rank to perform temporarily the duties required of members of the next higher rank ". (N. Y. City Regulations of Uniformed Force of Fire Department, §§ 3.1.14, 2.1.5.)

Moreover, without budgetary approval of appropriation a head of a department cannot make appointments. (*Matter of Ross* v. *LaGuardia*, 287 N. Y. 28.) Nor may the head of a department who is vested with the responsibility of running that department be compelled to make permanent appointments in the absence of specific legislative mandate. (*Matter of Jaffe* v. *Board of Educ.*, 265 N. Y. 160; *Matter of Davis* v. *Board of Educ.*, 263 App. Div. 369, mod. 288 N. Y. 330.) Lacking an appointment thereto, an employee is not entitled to the salary or the tenure of a position even though he is temporarily assigned to and performs the duties of that position. (*Stetson* v. *Board of Educ.*, 218 N. Y. 301; *Thomson* v. *Board of Educ.*, 201 N. Y. 457; *Matter of Aronson* v. *Finegan*, 253 App. Div. 713, motion for leave to appeal denied 277 N. Y. 738.) The orders issued here by the fire commissioner were made in good faith and in the exercise of a sound discretion. With the exercise of such discretion the courts will not interfere.

There is no authority in law for an order to annul the action of the fire commissioner in assigning petitioners to temporarily perform the duties of acting battalion chief, nor is there any warrant for an injunction order restraining the fire commissioner from making such assignments in the future. While the plight of petitioners, who for some time have been on an eligible list for promotion to battalion chief, is unfortunate and their claim for permanent promotion to such position where there are vacancies, is one possessed of much merit, an appeal for relief must go to the Legislature and not to the courts.

Accordingly, I dissent and vote to affirm.

PECK, P. J., DORE and BASTOW, JJ., concur with BOTEIN, J.; COHN, J., dissents and votes to affirm in opinion.

Order reversed and respondent is directed to refrain from continuing to make the appointments proscribed in the opinion herein. More precise provisions will be made in the order to be entered herein. Settle order on notice.