In the Matter of ARTHUR B. DAUB, Respondent, against DOUGLAS C. COUPE, as Commissioner of the Division of Standards and Purchase of the State of New York, Appellant.

First Department, November 17, 1959.

*Daniel M. Cohen* of counsel (*Norman M. Beck* and *Paxton Blair* with him on the brief; *Louis J. Lefkowitz, Attorney-General,* attorney), for appellant.

*Joseph Apfel* for respondent.

STEVENS, J. This is an appeal from a final ordered entered March 9, 1959, which directed the reinstatement of petitioner to the position of Senior Surplus Food Inspector with back pay from the date of his discharge. The appeal also brings up for review an intermediate order of November 28, 1958 which directed the trial of certain issues raised by the petition and answer.

The petitioner-respondent (herein called petitioner) took a civil service examination on September 21, 1957, for the position of Food Inspector and for the position of Senior Surplus Food Inspector. He passed both examinations and was placed on both eligible lists.

March 13, 1958, petitioner was given a temporary appointment as Senior Surplus Food Inspector for the Division of Standards and Purchase, assigned to or working out from 270 Broadway, Borough of Manhattan, City and State of New York. On July 10, 1958, petitioner was notified that his services would be terminated effective July 16, 1958, '' through no fault of your own.'' No hearing was had.

Petitioner brought a proceeding in the nature of mandamus under article 78 of the Civil Practice Act, to direct the respondent to reinstate him to the position from which his services had been terminated. Petitioner claimed his discharge was illegal, unreasonable, arbitrary, that he was entitled to a hearing, and that under the law, as a veteran, he could not be removed but must be transferred to a similar position. He asserted further that he was discharged for political reasons, was replaced by a non-civil service employee (though such person was given a different title) and that petitioner was '' the only available eligible for the position according to the Civil Service Law.''

Petitioner's motion was granted to the extent of directing a trial of the issues,'' [w]hether respondent failed to perform a duty enjoined on him by law and whether, in making his decision, a rule of law was violated to the prejudice of the petitioner ''. The matter was referred, on consent, to a Special Referee to hear and determine the issues.

Petitioner's contention that he was '' the only available eligible '' was based upon the language of subdivision 1 of regulation 2 of the Regulations of the State Civil Service Com-

mission which provides: "Appointments to positions in the state service, the duties of which are confined to a locality, outside of Albany county shall be made, *so far as practicable,* from residents of the judicial district or districts including such locality, *except that appointments to vacancies in state departments or institutions with offices in the borough of Manhattan, New York City, shall be made from among residents of the first, second, and tenth judicial districts."* (Emphasis supplied.)

Petitioner asserted that at the time of his appointment there were two vacancies in the Division of Standards and Purchase, that Barber, the person in whose place he was appointed, who resided in Niverville, N Y., was eligible only for the Albany vacancy and ineligible for the New York City vacancy by reason of the provision quoted. It should be noted that the Department of Civil Service, in its notice sent out prior to the examination, stated that one vacancy existed in the Albany office and the other in the New York City office. The then Commissioner of Standards and Purchase testified at the hearing, however, that originally there were two vacancies for Senior Surplus Food Inspector in the Division of Standards and Purchase with no such geographical limitation and that such Inspectors' jurisdiction embraced the entire State, with a main office in Albany and a branch office in New York City.

Barber, the permanent incumbent whom petitioner supplanted, was promoted to the position of Supervisor of Surplus Food Distribution. Such promotion was provisional, for neither an eligible nor a promotion list existed. (Civil Service Law, § 15, subd. 1.) When his services in that position proved unsatisfactory he was directed on May 9, 1958 to return to his original Item (No. 1005) as Senior Surplus Food Inspector. Prior to Barber's promotion to Senior Surplus Food Inspector, he occupied the position of Surplus Food Inspector.

The noncivil service employee, to whom petitioner referred, had been appointed to the position of Supervisor of Surplus Food Distribution in the Division of Standards and Purchase and served from July 3, 1958 to December 3, 1958, when his services were terminated. Since that appointment was to a position created by the Commissioner under the authority of section 200 of the Executive Law, and was one for which the petitioner was not eligible, and for which no list existed, no further discussion is required as to that employee.

The position of Supervisor of Surplus Food Distribution was created by the Commissioner of the Division of Standards and Purchase. While serving provisionally as Supervisor, Barber's promotion to the position of Senior Surplus Food Inspector

(Item No. 1005) became permanent, effective December 19, 1957. Promotion lists and open competitive lists existed for the positions of Food Inspector and Senior Surplus Food Inspector, but, as pointed out, none existed for the Supervisor's position.

The Special Referee concluded that Barber had been appointed to fill the vacancy of Senior Surplus Food Inspector in the Albany office, "the only position for which he was eligible at that time", by reason of the language of subdivision 1 of regulation 2 of the Regulations of the State Civil Service Commission. He construed the language of that subdivision to be mandatory and not discretionary. Accordingly he held that petitioner had been appointed not to fill the vacancy created by Barber's provisional promotion, "but rather to fill the vacancy which existed in the New York City office as stated in the Department of Civil Service bulletin, a position for which Barber was never legally qualified", by reason of his non-residence in the judicial districts.

The Special Referee determined that the Commissioner had the power under section 200 of the Executive Law to create the position of Supervisor and make the necessary appointments thereto in his discretion, since no lists were available and the appointments were provisional. The pertinent language of that section clearly supports this view: "Such commissioner, subject to rules prescribed by the governor, may establish such bureaus in the division as he may deem necessary and may appoint such deputies, assistants and other employees as may be needed for the performance of his duties and may prescribe their powers and duties and fix their compensation within the amount appropriated therefor." (Executive Law, § 200.)

Subdivision 3 of section 15 of the old Civil Service Law (as amd. by L. 1953, ch. 19, § 11, eff. July 1, 1953)* then applicable, (amd. and renum. by L. 1958, ch. 790, § 64, subd. 1) read as follows: "3. When the services to be rendered by an appointee are for a temporary period not to exceed one month and the need of such service is important and urgent, the appointing officer may select for such temporary service any person on the proper list of those eligible for a permanent appointment without regard to his standing on such list. A temporary appointment may be made for a period exceeding one month under the following circumstances only: (a) When an employee is on leave of absence a temporary appointment to such position may be made for the duration of such leave of absence, not

---

* References generally are to the provisions of the Civil Service Law in effect at the time of the appointment, as set forth in McKinney's Cons. Laws of N. Y., Book 9, and Appendix.

exceeding one year; (b) A temporary appointment may be made for a period not exceeding six months when it is found by the state civil service department or the appropriate municipal commission, upon due inquiry, that the position will not continue in existence for a longer period; provided, however, that if a temporary appointment is made for a period exceeding one month, it shall be made by the selection of one of the three persons standing highest on an appropriate eligible list, who are willing to accept such temporary appointment. Successive temporary appointments shall not be made to the. same position.''

On appeal, the petitioner argues that he had acquired the status of a permanent civil service employee both by reason of the length of his service and Barber's alleged ineligibility and that the duties, not the title determine the position.

The respondent urges that the petitioner, who was not even a top-three eligible, received merely a temporary appointment which could not ripen into a permanent appointment, nor confer a vested right to the position.

There are three primary issues to be resolved. (1) Was Barber's appointment to Item 1005, Senior Surplus Food Inspector, invalid by reason of his residence? (2) Was there a permanent vacancy in Item 1005 at the time of petitioner's initial appointment? (3) Did petitioner's appointment become permanent by reason of the fact that he admittedly served in excess of three months?

Subdivision 1 of regulation 2 speaks of '' appointments '' to positions in State service. I do not equate the term '' appointment '' with that of '' promotion ''. To appoint is to designate or assign to a position. To promote is to advance or progress to a higher grade, position or degree. Promotion cannot occur until there exists a condition or status from which there can be advancement or progress. Appointment creates or establishes the condition which later can be acted upon. Indeed the Civil Service Law recognizes a distinction both in the provisions in effect prior to April 1, 1959 (see §§ 14, 27, 41, subds. 2, 5; Rules for Classified Civil Service, rules XII-A, XIII, XIV) and in the provisions in effect thereafter (see §§ 52, 61, 106; Rules for Classified Service, rules VI, XII, XX, XXI).

The restriction in the language of subdivision 1 of regulation 2 of the Regulations of the State Civil Service Commission, that the appointment '' shall be made from among residents of the first, second, and tenth judicial districts '' does not apply to the *promotion* of Barber from the position of Food Inspector to that of Senior Surplus Food Inspector, for such language

refers to original appointments not to promotions. Even if we were to conclude that the restriction is applicable to promotions as well as original appointments it has been held under the provisions of the Civil Service Law in effect at the time of the occurrences complained of (§ 14; Rules for Classified Service, rule IV, subd. 4), that the requirements are directory rather than mandatory (*Matter of Marasco* v. *Morse,* 9 Misc 2d 296, 302, affd. 263 App. Div. 1063, affd. 289 N. Y. 768) which involved a provisional appointment.

When Barber was promoted to the position of Senior Surplus Food Inspector such promotion was in accordance with Civil Service Law (Civil Service Law, § 16). That statutory requirement takes precedence over the language of subdivision 1 of regulation 2. (Civil Service Law, § 10; Rules for Classified Civil Service, rule XXIII.)

There was a vacancy when petitioner was appointed but such vacancy was necessarily temporary by reason of the provisional appointment of Barber to the position of Supervisor of Surplus Food Distribution. For the Commissioner was without power or authority to make a permanent appointment under such conditions (Rules for Classified Civil Service, rule VIII, subd. 4). Nor could the Civil Service approve Barber's provisional appointment until the Commissioner agreed not to fill Barber's position permanently or Barber signed an unqualified resignation (rule VIII, subd. 4), which he did not do. The documentary evidence establishes conclusively that the appointment was temporary, that petitioner knew it to be temporary, was never misled, and that he in fact so regarded it.

Did the retention of petitioner in the position for a period in excess of three months create a vested interest in the position so that he is entitled to reinstatement? The answer must be in the negative.

At the time of Barber's permanent appointment to the position of Senior Surplus Food Inspector, effective December 19, 1957, petitioner was not among the first three eligibles but was number 5 on the list. He moved to number 2 on the canvass list of those who would accept temporary appointment, but his permanent standing was not altered so as to place him among the first three. Nor does it appear that those above him in standing were disqualified, ineligible, or declined permanent appointment.

Minimally two conditions must coexist before a temporary appointment may be succeeded by or become a permanent appointment so as to entitle an ousted employee to reinstate-

ment. He must be among the first three on the eligible list at the time of the appointment so as to be qualified and capable of receiving the appointment, and there must be a vacancy. (Cf. *Matter of Moreland* v. *Arenson,* 19 Misc 2d 385; *Matter of Marasco* v. *Morse,* 9 Misc 2d 296, affd. 263 App. Div. 1063, affd. 289 N. Y. 768, *supra*; *Matter of Maxwell* v. *Conway,* 19 Misc 2d 381; Rules for Classified Civil Service, rule VIII, subd. 1.)

Absent the conditions enumerated as in the instant case, mere retention in service beyond the time specified for temporary appointment will not confer legal right of tenure (*Matter of Hilsenrad* v. *Miller,* 284 N. Y. 446), nor entitle petitioner to a hearing before termination of such employment. The right to a hearing is an incident of legal tenure (Civil Service Law, § 22, subds. 2, 4). (Cf. *Matter of Healey* v. *Bazinet,* 291 N. Y. 430.)

Continuation of petitioner's service as a temporary appointee beyond the permissible period might affect the validity of such appointment, but it would not transform it into a valid permanent appointment. (*Matter of Marasco* v. *Morse, supra*; cf. *Matter of Lane* v. *Corsi,* 275 App. Div. 977; *Matter of Winsman* v. *Lyons,* 196 Misc. 1010; *Matter of Going* v. *Kennedy,* 5 A D 2d 173, which involved a probationary patrolman who served a short time beyond the maximum period; and *Matter of Camfield* v. *Mealy,* 288 N. Y. 149, where extended service as a provisional appointee in violation of the statute was not accepted as a qualification for an examination, nor did it entitle the appointee to credit therefor.)

Petitioner's reliance, in part, upon *Matter of Battaglia* v. *Morton* (272 App. Div. 372) seems unwarranted since the major question there involved was whether the petitioner was entitled to be placed on a special military eligible list. The pivotal fact had to do with military service as related to civil service lists. It does not support petitioner's position. Nor does *Matter of O'Reilly* v. *Grumet* (284 App. Div. 440) aid petitioner. In the *O'Reilly* case the petitioners who were eligible for appointment to the position of battalion chief had, by a series of " temporary appointments ", been serving for a number of years in that position. Thus they were actually doing out-of-grade work, without having the benefits and protection of the position to which they were entitled had budget certificates been issued, and for which they were qualified.

Accordingly, the order of March 9, 1959 appealed from should be reversed on the law and the facts, and the petition dismissed,

with costs to the appellant and the appeal from the order of November 28, 1958 dismissed as academic, with costs to the appellant.

BREITEL, J. P., RABIN, M. M. FRANK and McNALLY, JJ., concur.

Order of March 9, 1959 unanimously reversed on the law and on the facts, and the petition dismissed; and the appeal from the order of November 28, 1958 dismissed as academic, with $20 costs and disbursements to the appellant.